Powers *et al.* vs. Armstrong *et al.*

No. 78.—VIRGIL POWERS and others, plaintiffs in error, *vs.* JAMES W. ARMSTRONG and others, defendants in error.

[1.] The Legislature cannot divest an individual of his property, against his will, without providing or paying a just compensation for it.

[2.] A party whose property is taken by an incorporated company, for the use of the company, maintains to it the relation of owner, until he is paid —his is the ownership and not a lien.

[3.] The builders of a bridge, for an incorporated company, on the land of a third person, knowingly, can have no lien against the owner of the land; nor can a judgment obtained by him against the company, have a lien thereon, the land never having been the property of the company.

Application for injunction, in Macon Superior Court. De-cision by Judge POWERS, at Chambers, 15th November, 1855.

This bill was filed by Virgil Powers, Daniel W. Vischer and Jacob G. Vischer, alleging that in 1852, the Legislature incorporated " The Oglethorpe Bridge & Turnpike Company," for the building a bridge and turnpike across the Flint River, near the City of Oglethorpe; that by the charter, a provision was made for ascertaining the value of land taken for this purpose; and the award provided therein, was to operate as a judgment against the company, and be enforced by execution; that in March, 1853, James W. Armstrong filed his bill against the company, alleging that he owned lands on both sides of the river; and also, a ferry worth $15.000, which would be utterly destroyed by the erection of the bridge; that the destruction of timber by the company, would amount to $3.000 more. The bill prayed a perpetual injunction. The injunction was afterwards, by order of the Court, dissolved, by the company's giving bond, with good security, to the amount of $20.000. On 21st December, 1853, complainants contracted with the company for the building of their bridge, and proceeded to do the work; and that on a settlement, on the 13th January, 1855, the company acknowledged themselves to be due to complainants, the sum

of $9.808 04. The bill farther charged, that Armstrong failed and refused to have his damages assessed under the charter, until complainants had made considerable progress in their work, and then certain appraisers were appointed, who awarded to Armstrong $6.000. The bill suggested that this award was void—1st. Because the appraisers were sworn by a Notary Public; and 2d. Because the award did not set apart any specified quantity of land, as required by the charter. From this award, the company appealed, and the proceedings were dismissed. Subsequently, Armstrong, of his own accord, summoned the same appraisers, who made the same award again. The company again appealed.

At September Term, 1855, of Macon Superior Court, complainants obtained a judgment against the said company for the said balance due them; but the Court having adjourned till 2d Monday in January, 1856, a *fi. fa.* could not issue thereon. At October Term, 1855, of Dooly Superior Court, Armstrong knowing the foregoing facts, fraudulently combined with the company to release them from all damages, on the Macon County side of the river, if they would confess judgment for the said last award of $6.000; and farther agreed, also, to release certain of the securities to the said bond of $20.000. At the same term, an order was taken by the fraudulent consent of said parties, appointing three commissioners to sell the bridge and the land attached thereto, for cash, on 1st Tuesday in December, 1855; that this confession of judgment was made by two Attorneys, who were securities on the said bond for $20.000, without the consent or authority of the company. Complainants charge that theirs is the oldest judgment lien; and moreover, in Equity, they are entitled to a lien, as the builders and furnishers of materials for said bridge; that Armstrong ought, at least, to be compelled to exhaust the fund provided for him, in the bond for $20.-000, before appealing to this, the only fund of complainants. The prayer was for an injunction.

Judge POWERS refused to sanction the bill, and this decision is assigned as error.

Powers *et al.* *vs.* Armstrong *et al.*

SCARBOROUGH; MILLER & HALL, for plaintiffs in error.

FISH, for defendants.

*By the Court.*—McDONALD, J. delivering the opinion.

The complainant contracted with the Oglethorpe Bridge & Turnpike Company to build a bridge across Flint River, at or near the ferry known as Traveller's Rest Ferry. They proceeded with their contract, and built the bridge on the land of James W. Armstrong, the defendant. The company and Armstrong could not agree as to the value of the land, and a proceeding was instituted under the charter to assess it, which resulted in the confession of judgment by the company to Armstrong, in the sum of $6.000; which proceedings, the complainants charge to have been collusive, irregular and fraudulent; and that the damages were excessive and exorbitant, and that the company is insolvent. The Circuit Judge refused to sanction a bill praying an injunction, and that refusal is made the ground of error. A few leading views of the prominent points which appear in the record, will be sufficient to determine the propriety of the decision of the Court. Armstrong, the defendant, is the owner of the land on which the bridge is built; he has never been paid for the land on which it is erected; he has got a confession of judgment against the company, and the company, according to complainants' allegations, is insolvent. Complainants have obtained judgment also, on their contract with the company, for building the bridge. An appeal has been entered from that, and complainants claim a lien superior to defendants.

[1.] It was insisted in the argument, that under the law, the confession of judgment by the company to Armstrong, vests in the company the fee simple title to the land in question, and leaves to Armstrong a judgment against the company, as the consideration for his land. If the literal construction of the Act be the true one, and if that be the literal

construction of it, we have no hesitation in saying it is void. The Legislature cannot thus divest a man of his property, against his will, without compensation. It is still Armstrong's property.

[2.] The title to the land, then, is still in Armstrong; it has never been out of him; his is not a lien, but a property. Does the judgment obtained by complainants against the company, create a lien on Armstrong's property? That cannot be, for Armstrong is no party to the judgment; and the property upon which it is said the lien attaches, is not now, nor has it ever been the property of the defendant. But it is said that they have a lien as builders of the bridge, superior to Armstrong's lien.

[3.] That cannot be, for Armstrong has no lien; he owns the property; they can have no lien as builders, for they built the bridge on Armstrong's land, knowing that it was his land. They stipulated with the company that they should secure the right of way to build said bridge, and if they, complainants, were delayed or prevented by legal process from building the bridge, the company should pay for all work done, and damages sustained by complainant. There was no expenditure of money here, through inadvertence or mistake of title. The complainants knew that they were not expending money or labour on their own land, or the land of the company. The bridge was not built there by the request or acquiescence of Armstrong. He opposed it and enjoined, all the time contending against it. The bond which was given, was not at the instance of Armstrong. It was given in compliance with a conditional order for an injunction, and upon the execution of which, the injunction was to be dissolved; and it is extremely questionable, for reasons not necessary to state here, if it be recoverable, even if the defendant were disposed to resort to it. The bill does not present the case of one creditor, who has two funds from which he may satsify his *debt,* and another party who has a lien on one of the same funds for another debt. It is quite different. The land is Armstrong's. He has never bargained it away, and it has

not been taken by the company in a manner to deprive him of his title, or to vest it in the company; and all these things were known to complainants when they expended their money and labour upon it. The judgment of the Court below must be affirmed.

There are allegations in the bill, however, which should have some weight, as entitling the complainants to some kind of relief; but standing alone, they would not justify the Chancellor's interfering by injunction, or, indeed, in making a decree of any sort in their favor. After the first decree was set aside, the defendant, although one of the commissioners had declined to act, prevailed on the same commissioners to make a new award. They awarded the same amount, $6.000. From this award the company appealed; and then it was, the complainants charge, that the collusive and fraudulent confession of judgment was made for an exorbitant and excessive amount of damages, and to their injury. These are the charges, substantially. One part of the agreement was, that Armstrong obliged himself to make the bridge bring the $6000, and had released all other damages. These facts are alleged upon information and belief. If true, does it change the title to the property? Not at all. The purchaser, at the sale, would have had a clear equity against Armstrong, and might have compelled him to execute a title; but the title had not passed under the charter, because it could not pass until Armstrong was paid; and if the charter contemplated that it should pass without payment, for so much, it is void. But this contract, under which alone the purchaser would have had an available equity, the complainants seek to set aside. They charge it to be a nullity.

The Oglethorpe Bridge & Turnpike Co. still exists. Armstrong has taken steps to get pay for his land, taken by the company, and has obtained a judgment on confession—not on the verdict of a Jury. And that confession is charged to be fraudulent. If he gets just compensation for his land, &c. it is all he is entitled to. His is a voluntary proceeding, under the charter, to do this. If the landings and land taken

for the turnpike, and damages he is legally entitled to, are worth landings, land for turnpike, ferry-bridge and all, it is right that he should have them ; if not, he should have what they are worth, legally and fairly assessed; and before he is thus paid, the complainants have no right for their demand to proceed against that property. We have therefore, in this case, determined, that while we affirm the judgment of the Court below, the complainants may be allowed so to amend their bill as to entitle them to an injunction, by stating the value of the right of way of defendant, Armstrong, and his land taken for the abutment of the bridge, including all damage he is entitled to under the charter ; and tendering the amount thereof to the said Armstrong, in the same manner as if it were a bill for the specific performance of a contract, stating, further, the value of the bridge as it stands.