## SILVEY *et al. v.* GEORGIA RAILWAY & ELECTRIC CO.

1. Upon review, the court declines to overrule the decisions in the cases of *Moore* v. *City of Atlanta*, 70 *Ga.* 611, and *Brown* v. *Atlanta Railway & Power Co.*, 113 *Ga.* 462 (39 S. E. 71).

2. A city ordinance authorizing a street-railway company to construct and lay such double tracks in the streets where it already has single tracks, as it may from time to time deem proper for the purpose of rendering efficient service, sufficiently designates the streets in which the company may lay the double tracks. And the fact that the time at which such double tracks may be laid is thus left to the discretion of the company, to be exercised by it for the purpose of "rendering efficient service," does not divest the city of the legislative power involved in the grant of a franchise to the street-railway company, nor does it confer upon the company itself the right to exercise an authority involving the elements of governmental or legislative power.

2. An ordinance providing that a single track may be laid in any given street is not in any sense repealed by a subsequent ordinance authorizing a street-railway company to lay double tracks in all streets where single tracks have been laid.

4. Under the evidence and the pleadings the court did not err in refusing the interlocutory injunction.

JANUARY 16, 1912.

Petition for injunction. Before Judge Pendleton. Fulton superior court. May 20, 1911.

*Henry A. Alexander* and *Smith, Hammond & Smith,* for plaintiffs.

*Colquitt & Conyers,* for defendant.

BECK, J. Jerome Silvey and other citizens and taxpayers of the City of Atlanta, all of whom resided on Forrest avenue, a public street in the City of Atlanta, and who owned property abutting on that street, filed their equitable petition against the Georgia Railway and Electric Company, alleging as follows: The defendant is preparing to construct and operate on Forrest avenue a line of double tracks in lieu of the present single track now being operated. If this purpose should be consummated, it would, on account of the narrowness of Forrest avenue, result in the creation of a public nuisance by making it difficult and dangerous for other vehicles to use said street, and would inflict a special damage upon petitioners, not shared by the general public, by destroying the right of ingress and egress to and from their property by vehicles in the street, and would inflict upon them irreparable damages which can not be estimated in money. The company has

never been given the right, by any valid ordinance, to construct a double track; and the construction and operation of a double track would constitute an additional servitude and burden upon the fee in the street, which was not contemplated in the original dedication of the street. A large part of the value of the property of the plaintiffs is in the shade-trees growing on the sidewalk, some of which are over forty years old; and in the construction of a double-track line which is to be operated by a trolley system of electric wires, it would be necessary to make a place for the trolley-wires, and in doing so it would be necessary to cut off many large limbs and branches of said trees and greatly impair their beauty and symmetry. The fee of the sidewalk and roadway of Forrest avenue is in the abutting owners, and the trees are their individual property, and the cutting and defacing of these trees would constitute an actual taking of their property. The defendant has not tendered to them any sum for the damage to be done to their property, and has made no effort to ascertain the same; and until this is done the proceedings of the defendant are without authority and void, and are a trespass upon petitioners' property. They pray for the grant of an injunction against the defendant, restraining it from constructing the double track as proposed. The defendant contends that it has authority to construct a double track, given to it in a valid ordinance passed by the municipal authorities. It denies that it would injure or damage the plaintiffs' property, or that it would actually take any of their property, or that the laying of the double track would be an additional servitude and burden upon the fee in the street; and it shows that while it will be necessary to trim some portion of the branches of the trees which grow over the sidewalk to a certain extent, the same will be done under the supervision of the Park Commission of the City of Atlanta or by the authorities of said city, and will not result in any damage to the value or the beauty of the trees. Also, that on account of the growth and development of the City of Atlanta the construction of a double track is necessary in order to render efficient service to the public. At the interlocutory hearing the court refused the injunction, and the petitioners excepted.

In an ordinance of the City of Atlanta, granting to the Atlanta Rapid Transit Company a franchise to construct a street-car line

on Forrest avenue, approved February 26, 1901, it is provided
that "authority and consent be and the same are hereby granted
to the Atlanta Rapid Transit Company, its successors and as-
signs, to construct, electrically equip, and operate a line of single
track of street railway, with all the necessary and proper turn-
outs, switches, curves, and connections along and over the following
route, to wit: Commencing on Forrest avenue at the intersection of
said street with Peachtree street and Ivy street, and running thence
on Forrest avenue to Piedmont avenue, and from Piedmont ave-
nue to Jackson street; and if Forrest avenue be subsequently ex-
tended from Jackson street to Boulevard, thence to Boulevard.
The right being given to construct, equip, and operate either a
single or double track on said street from Piedmont avenue to
Jackson street or Boulevard in the event Forrest avenue be so
extended." The ordinance embraces certain qualifications, limi-
tations, restrictions, and conditions upon the authority granted in
the section quoted above. Another ordinance by the mayor and
general council of the City of Atlanta was adopted January 27,
1902, and approved February 8, 1902, which provided for the
consolidation of the Atlanta Railway & Power Company, the At-
lanta Rapid Transit Company, the Georgia Electric Light Com-
pany, and the Atlanta Steam Company. The consolidated com-
pany resulting from the merger of the companies just named is the
defendant in the present suit, and is the successor in title to all
the rights, privileges, and franchises of the constituent companies
named above, with certain specified exceptions not necessary here
to note. The 10th section of the above ordinance passed in 1902
provides as follows: "Be it further ordained, that said consoli-
dated company, ·its successors and assigns, are hereby granted
the right and permission to physically connect, merge, and con-
solidate the said properties which it may acquire, wherever it de-
sires, and to construct and lay such double tracks, curves, switches,
connections, wires, tracks, etc., as it may from time to time deem
proper for this purpose, or for the purpose of rendering efficient
service, and to straighten out the kinks in its tracks and lines; it·
being the intention hereof to allow the full and complete consoli-
dation of the companies hereinbefore referred to and their proper-
ties whereby the freest possible use and profit thereof may result
to said consolidated company, and so that said company may con-

solidate, control, and operate all of said properties as it may desire, subject only to proper police laws and restrictions."

1. It is insisted by petitioners that this section of the ordinance of 1902 is violative of paragraph 1, section 3, article 1 of the constitution of the State of Georgia, providing that private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid, in that it makes no provision for the assessment and payment of damages for injury to the property of petitioners in constructing a double-track line. The question of the validity of section 10 of the ordinance of 1902, on the ground that it is violative of the constitutional provision · just cited, is controlled by the decisions in the cases of *Moore* v. *City of Atlanta,* 70 *Ga.* 611, and *Brown* v. *Atlanta Railway & Power Co.,* 113 *Ga.* 462 (39 S. E. 71). We have been requested to review and reverse these cases. In our opinion the rulings made in these cases should not now be disturbed, and we accordingly decline to overrule them. See, in this connection, *Fleming* v. *City of Rome,* 130 *Ga.* 383 (61 S. E. 5).

The court was authorized to hold, under the evidence in the case, that the trimming of shade-trees standing on the sidewalk in front of petitioners' property would not constitute an actual taking of petitioners' property. And where the branches of these trees extend over the streets in such a manner as to interfere with the enjoyment of the easement in a street, the city authorities would have the right to cut and trim the branches, though in so doing they should exercise due care not unnecessarily to injuriously affect the trees, their beauty and their symmetry. *City of Atlanta* v. *Holliday,* 96 *Ga.* 546 (23 S. E. 509).

2. In paragraph nine (9) of the petition it is conceded that section 10 of the ordinance of 1902, already set forth, gives to the consolidated company, in a general clause, a right to double-track any of its existing lines; but the plaintiffs contend, that this general grant of authority to lay double tracks should not be given effect, as it does not specify the streets in which the double tracks shall be laid, but leaves to the beneficiary company the right to select the streets and choose the time at which the double tracks shall be laid; that the grant of a right to construct a street railway in the streets of a city is the exercise of governmental power; that the legislative power thus involved in granting a street-

railway franchise can not be delegated by a municipal government, and especially that such delegation would be void if made to the street-railway company itself; and that if effect is given to this general clause in section 10 of the ordinance of 1902, it would amount, in effect, to divesting the city council of this governmental power in this particular respect and conferring it upon the street-railway company. We do not think this contention is sound. The franchise authorizing the laying of a single track in the street had been duly granted, so far as appears from the record; and no suggestion to the contrary is made. So far as the granting of the right to lay a double track where only a single track had previously been laid may be considered as a franchise, that, too, was granted by the city council in the exercise of its governmental power. The franchise was granted in all of the streets where single tracks had already been laid. The council knew in which streets these single tracks then existed, and this designation of the streets in which the defendant company might lay double tracks was as effectual as if it had named each one of them. The fact that the company was to exercise a discretion as to the time at which the improvements along its line should be made and double tracks should be laid was not in the nature of the exercise of any creative or legislative power, in which franchises like those under consideration must have their origin. It did nothing more than confer upon the company the authority to decide when the exigencies of traffic resulting from the growth and expansion of the city required it to increase the facilities for handling the traffic. It no more conferred upon the company the right to exercise a legislative or governmental function than would an ordinance which granted a franchise to lay a street railway in the streets of a city and which provided that the track might be laid at any time within one or two years. In each case—that supposed as well as the actual case—discretion as to the exact time at which the work of laying the track should be commenced and performed would be vested in the company receiving the franchise; the only difference being that in the supposed case there was a limitation of time within which the privilege conferred should be exercised.

3. We can not agree with the contention of counsel for plaintiffs in error that so much of the ordinance of 1902 as grants

the right to lay a double track in streets where there was already a single track in any way contravenes or conflicts with that part of the ordinance of 1901, which allows the laying of a single track in a designated portion of Forrest avenue or throughout the length of that street. But where a single track had been originally laid under the ordinance of 1901, a double track could be laid under the provisions of the ordinance of 1902.

4. Under the evidence and the pleadings the court did not err in refusing the interlocutory injunction.

*Judgment affirmed. All the Justices concur, except Hill, J., not presiding.*