BROWN *v.* CITY OF ATLANTA *et al.*

No. 6676.   NOVEMBER 17, 1928.   REHEARING DENIED DECEMBER 15, 1928.

418

420

R. B. Blackburn and Walter R. Brown, for plaintiff.

J. L. Mayson, C. S. Winn, Spalding, MacDougald & Sibley, and Charles B. Shelton, for defendants.

GILBERT, J.  "No person shall be deprived of life, liberty, or property, except by due process of law."  Const. Ga., art. 1, sec. 1, par. 3, Civil Code (1910), § 6359.  It is insisted that petitioner is about to be "deprived" of his property by the defendants without affording him "due process of law."  We shall first undertake

to determine whether the petitioner, under the facts alleged, is about to be "deprived" of his property. If he is not, then there will be no necessity for considering the question of due process. It is not contended that the city is about to "deprive" petitioner of his private property abutting on the street, but that the city is merely proceeding to temporarily obstruct and interfere with the right of ingress and egress to and from such property. When its present street improvements have been finished, the city will leave open and unobstructed the street and sidewalk on which petitioner's property abuts, but the grade will have been changed and the sidewalk narrowed. In fact it is the contention of the city that the street improvements will vastly enhance the value of petitioner's property. Whether that contention is justified future events alone may determine. Does the temporary obstruction of the right of ingress and egress "deprive" petitioner of his private property? We unhesitatingly decide that it does not. "The right temporarily to obstruct a street springs from reasonable necessity, and is limited by it, and those who exercise the right must so conduct themselves as to discommode others as little as is reasonably practicable, and remove the obstruction or impediment within a reasonable time, having regard to the necessities and circumstances of the case; and when they have done this, the law holds them harmless." *Simon* v. *Atlanta,* 67 *Ga.* 618, 622 (44 Am. R. 739). We think it has been uniformly held that a temporary obstruction in a street does not deprive the abutting owner of his property; and of course the word "property" as here used includes any easement in the street for ingress and egress.

If the building of a viaduct along a street made ingress and egress permanently less convenient, the result would be the same. It was so decided in a case arising out of the construction of the Forsyth Street viaduct. "Though the erection of such a bridge may have rendered less convenient the means of ingress to and egress from an existing building upon an abutting lot, this was not a 'taking' of property within the meaning of that clause of the constitution which declares that 'Private property shall not be taken, or damaged, for public purposes, without just and adequate compensation being first paid.'" *Hurt* v. *Atlanta,* 100 *Ga.* 274 (2), 276-278 (28 S. E. 65). That decision also negatives the claim that the defendants are trespassers. In the *Hurt* case one

contention was that the city was a trespasser, because it had proceeded to erect the bridge without giving any notice of its intention to do so or taking any steps to appoint appraisers to assess damages. The same contention is made here. On that point the court, after a thorough consideration, declared: "The question whether the mayor and general council were, in this instance, legally bound to appoint appraisers and give Mrs. Hurt notice to do so, in order that the persons so selected might 'proceed to assess the damages sustained, or the advantages derived,' turns upon the true meaning of the word 'damages' as here used. It is obvious that 'to open, lay out, widen' or 'straighten' a street necessarily involves the taking of land not hitherto used for street purposes; and therefore, as to any or all of these matters, the damages contemplated by the act can easily and naturally be held to mean compensation to landowners for property thus taken. But it was insisted that the municipal authorities were also empowered to 'otherwise change' streets; that the words just quoted were designed to meet just such a case as the present, because the building of a structure like the Forsyth Street bridge was 'otherwise changing' that street, and that, accordingly, the act of 1874 contemplated the assessment and allowance of incidental damages in a case like this, even though there was no actual taking of a citizen's property. It will be observed that the provisions of that section of the act of 1874 with which we are now dealing were taken from section 11 of the act of 1859, incorporating the Town of Warrenton and amending the charter of Atlanta. Acts of 1859, p. 215. In order to ascertain the kind of 'damages' referred to by these acts, and for what the same were to be allowed, the acts themselves must be construed in the light of the law as it was understood when they were passed. Prior to the ratification of the present constitution, a municipal corporation, proceeding regularly and within the scope of its authority, was not liable for consequential damages resulting to property owners from paving, grading, or otherwise improving its streets. The question whether it could be held liable for such damages was incidentally involved in the case of *Markham* v. *Mayor & Council of Atlanta*, 23 *Ga.* 402; and though not then decided, Judge Lumpkin intimated very strongly that it should be answered in the negative, and cited authorities supporting that conclusion. In *Mayor & Council of Rome*

v. *Omberg,* 28 *Ga.* 46 [73 Am. D. 748], this same question arose, and it was distinctly decided that the municipality was not liable, the court holding that though the plaintiff had been injured by the grading of a street, yet, as no part of his land had been touched, it was damnum absque injuria. The first of these two cases was decided at the August term, 1857, of this court; and the second at the March term, 1859. The act amending Atlanta's charter was approved on the 12th day of December following. So it was settled law, at the time of its passage, that consequential damages in cases of this character were not allowable; and if the General Assembly had desired to change the established rule, it would have done so. Certainly, in the absence of express words showing a contrary intention, it is safe to conclude that the word ' damages,' as used in the 11th section of this act, was not designed to embrace compensation for incidental injuries to realty which the highest court in the State had declared could not be recovered. The doctrine of the *Omberg* case was reaffirmed in *Roll* v. *City Council of Augusta,* 34 *Ga.* 326, decided in 1866, and recognized in *Mitchell* v. *Mayor & Council of Rome,* 49 *Ga.* 29 [15 Am. R. 669], decided in 1873. The act of 1874, establishing a new charter for Atlanta, merely retained the provisions of the act of 1859; and, though enacted after all the foregoing decisions had been rendered, made no attempt to broaden or enlarge the settled meaning of the word ' damages' as therein employed. Again, in *City of Atlanta* v. *Green,* 67 *Ga.* 386, and *Campbell* v. *Metropolitan Street Railroad Co.,* 82 *Ga.* 325 [9 S. E. 1078], this court approved as correct the doctrine of the cases above cited upon this question. In the *Green* case it was announced that the rule had been changed by that paragraph of the present constitution which declares, not only that private property shall not be taken, but also that it shall not be damaged, for public purposes, without compensation. But we are now striving to ascertain the meaning of the word ' damages' as employed in acts passed before the constitution of 1877, and the conclusion seems irresistible that the application of this term was confined to cases in which there was an actual taking and appropriation of property itself."

This court in the *Hurt* case also said: "There is little difficulty in holding that Mrs. Hurt was not entitled to damages upon the idea that the city took a portion of her property. The ' tak-

ing' referred to in the constitutional paragraph under consideration means a physical, tangible appropriation of the property of another. The cases above cited all bear out this idea; indeed, they are inconsistent with any other. If rendering ingress to and egress from a lot or building is 'taking' property from the owner, there is, in this respect, no substantial difference between the former constitutions of this State and the present one, and much learning and research have been vainly expended in determining the question dealt with in these cases and the authorities which they cite; for if a 'damaging' of this kind is the same thing as a 'taking,' there was no occasion for so much discussion of the question of liability. Beyond doubt, an easement is, in a sense, 'property;' and there are, perhaps, cases where the appropriation of a mere easement,—such, for instance, as a railroad right of way,— might be held to be a taking of property. Even then it would be a nice question as to whether such an appropriation should not more properly be termed a 'damaging' than a 'taking.' In either event compensation would have to be paid, and that is the material thing in such a matter. In the present case, however, treating Mrs. Hurt's right of ingress and egress to her building as an easement, the destruction or impairment of the same can not, we are satisfied, be regarded as a taking of her property within the meaning of the constitution. 'There is a broad distinction between cases of this character and those in which possession of, and dominion over, private property is taken for public use.' *Moore* v. *City of Atlanta,* 70 *Ga.* 612."

This ruling is well-nigh universal. The case of Sauer *v.* New York, 206 U. S. 536 (27 Sup. Ct. 686, 51 L. ed. 1176), arose out of the construction of a viaduct and the claim of an owner of abutting property for damages. The Supreme Court said, in part: "The State courts have uniformly held that the erection over a street of an elevated viaduct, intended for general public travel and not devoted to the exclusive use of a private transportation corporation is a legitimate street improvement equivalent to a change of grade; and that, as in the case of a change of grade, an owner of land abutting on the street is not entitled to damages for the impairment of access to his land and the lessening of the circulation of light and air over it. Selden *v.* Jacksonville, 28 Florida, 558 [10 So. 457, 14 L. R. A. 370, 29 Am. St. R. 278];

Willis *v.* Winona, 59 Minnesota, 27 [60 N. W. 814, 26 L. R. A. 142]; Colclough *v.* Milwaukee, 92 Wisconsin, 182 [65 N. W. 1039]; Walish *v.* Milwaukee, 95 Wisconsin, 16 [69 N. W. 818]; Home Building Company *v.* Roanoke, 91 Virginia, 52 [20 S. E. 895 27 L. R. A. 551] (cited with apparent approval by this court in Meyer *v.* Richmond, 172 U. S. 82, 95 [19 Sup. Ct. 106, 43 L. ed. 374]); Willetts Manufacturing Co. *v.* Mercer County, 62 N. J. Law, 95 [40 Atl. 782]; Brand *v.* Multnomah County, 38 Oregon, 79 [60 Pac. 390, 62 Pac. 209, 50 L. R. A. 389, 84 Am. St. R. 772]; Mead *v.* Portland, 45 Oregon, 1 [76 Pac. 347], affirmed by this court in 200 U. S. 148 [26 Sup. Ct. 171, 50 L. ed. 413]; Sears *v.* Crocker, 184 Massachusetts, 586 [69 N. E. 327 100 Am. St. R. 577]; (Semble) DeLucca *v.* North Little Rock, 142 Fed. Rep. 597." Quoting from Willis *v.* Winona, supra, the Supreme Court in the Sauer case continues: " ' The doctrine of courts everywhere, both in England and in this country (unless Ohio and Kentucky are excepted), is that so long as there is no application of the street to purposes other than those of a highway, any establishment or change of grade made lawfully, and not negligently performed, does not impose an additional servitude upon the street, and hence is not within the constitutional inhibition against taking private property without compensation, and is not the basis of an action for damages, unless there be an express statute to that effect. That this is the rule, and that the facts of this case will fall within it, is too well established by the decisions of this court to require the citation of authorities of other jurisdictions. ' " The charter granted by the General Assembly to the City of Atlanta provides: "The said Mayor and General Council shall have full power and authority to open, lay out, to widen, straighten, or otherwise change streets, alleys, and squares in the City of Atlanta." Code of Atlanta, § 328. Chief Justice Bleckley, speaking for the court in *Trustees* v. *Atlanta,* 93 *Ga.* 468, 474 (21 S. E. 74), with reference to that charter provision, said: "This grant is comprehensive enough to embrace the alteration of a street in any respect, whether on, below, or above the surface of the earth. And the power to open streets embraces the power to keep them open, not only on the surface but over and above the same indefinitely or, at all events, to such height as may be either necessary or reasonably desirable for all the purposes of a street, both with reference to its use by the

general public and to its use locally by those residing or having property adjacent thereto."

It would thus seem to be settled that the City of Atlanta has clear and undoubted legal right to raise the grade of Hunter Street as it purposes to do. Moreover, the street improvement at that point is but a small part of a comprehensive plan of public improvements, the main object of which is to construct two bridges or viaducts spanning the tracks of the Western & Atlantic Railroad on Pryor Street and Central Avenue. The General Assembly by resolution enacted in 1925 expressly conferred authority upon the city to construct the improvements mentioned. Ga. Laws 1925, p. 1596. The elaborate plans worked out by the city authorities have been approved by the representatives of the State of Georgia and the lessees of the said railroad. In order to accomplish the primary purpose on Pryor Street and Central Avenue, changes in other streets, affecting grades and similar details, are essential.

In *City of Atlanta* v. *Holliday,* 96 *Ga.* 546, 554 (23 S. E. 509), the question arose as to the right of the city to remove shade-trees along sidewalks. This court said: "Where the fee in the street itself is vested in the city authorities, as was the case in *Castleberry* v. *City of Atlanta,* 74 *Ga.* 164, an individual acquires no such personal right in the preservation of shade-trees standing thereon as would enable him to interfere by injunction with the city authorities in the exercise of a discretionary power of removing such trees as obstructions upon the public streets. He has a right to the maintenance of the street as a public highway unobstructed, but he has no legal right to the continuance in the street of a shade-tree after the city authorities have concluded to remove it as an obstruction. In such cases the control of the streets by the city authorities is absolute. In the present case, however, it is conceded that the fee to that portion of the street and sidewalks in controversy is vested in the abutting-lot owners. The city has upon them an easement in the nature of a right of way. The city authorities, in the first instance, by virtue of the dominant servitude imposed in favor of the city by the owners of the land, would have had the right to appropriate absolutely the entire width of the whole street to the uses of a public highway, removing therefrom all shade-trees or other obstructions that might have been therein. It had the power to elect the extent to which this servitude should

be imposed, and that part of the street not absolutely appropriated by the city under its easement as a right of way remained in the abutting-lot owners by virtue of their ownership of the fee. When, therefore, the city authorities, upon the opening of this street, allowed these trees to remain, that portion of the street actually covered by their trunks was unappropriated by the city and remained in the lot owners. The trees growing upon those portions of the street not appropriated were the private property of the lot owners, *but held subject to the exercise by the city of its right to extend its dominant easement over the ground occupied by them, whenever, in the judgment of the city authorities, it became necessary for the public necessity or convenience that this be done.*" (Italics ours.) Whether the city or the abutting-property owner owned the fee in Hunter Street at its intersection with Pryor Street, extending from the property line on one side of the street to the property line on the opposite side, including sidewalks, the city admittedly possessed a dominant easement. This easement was not restricted to definite widths for sidewalks and for vehicular travel. The city had the right to change the grade; that is, raise or lower the street surface, and it had the right to narrow or widen the sidewalks whenever "it became necessary for the public necessity or convenience that this be done." Under these rulings, it must be held that the city is not exceeding its charter powers. As was further said in the *Holliday* case: "The public convenience which will justify such a proceeding must amount to a public necessity. Whether a case of public necessity arises, as we have before observed, is a matter primarily for determination by the city authorities. If they exercise a wise discretion in regard to the matter, the courts are without power to control them." In the present case the city denies that the street "is any part of the property of the plaintiff, as an easement or otherwise." The petitioner neither alleges nor proves that he has any title to the fee in the street. He claims an easement for the purpose of ingress and egress.

Another provision of our constitution declares: "Private property shall not be taken or damaged, for public purposes, without just and adequate compensation being first paid." Art. 1, sec. 3, par. 1, Civil Code (1910), § 6388. This clause is not pleaded or relied upon by petitioner, but may be considered in arriving at a proper meaning of the words "taken" and "damaged." The mean-

ing of the words "taken" and "damaged," as used in this section, has been often considered by the courts, and the discussions are illuminating, in connection with the meaning of the word "deprived" in the due-process clause. Of course if property is not "taken" or "damaged" by a street improvement, the owner is in no sense "deprived." "Where an owner continues in the use and enjoyment of his property and property rights after the completion of a public improvement to the same extent and for the same purpose as before, his property has not been 'taken' within Const. art. 1, § 22, providing that private property shall not be taken or damaged for public use without compensation, and it can not be 'damaged' within that provision except by the invasion of a theoretical legal right." Salt Lake City v. East Jordan Irr. Co. 40 Utah, 126 (121 Pac. 592, 596) ; 1 Words & Phrases (2d S.), 1197. The relief sought in this case is by the drastic remedy of injunction which would stay vast public improvements, and where the chief complaint is against a great municipality, amply able to respond in damages if it should be found that plaintiff's property has been actually damaged in such way as to cause a legal liability on the part of the city.

In *Moore* v. *Atlanta*, 70 *Ga.* 611 (3), (4), it was held: "If any owner of property be damaged by the grading of a street so as to lessen the pecuniary value of such property, he may recover damages for such injury to his freehold. That damage will be measured by the decrease in the actual value of the property. Increase of value resulting from such improvements may be set off against the damages proved, the right of recovery turning in each case on the decreased pecuniary or market value of the property caused by the grade. The grading of streets should not be stopped, and extensive municipal improvements prevented by injunction, because of damage which would result to the owner of a lot bordering on the street. There is a broad distinction between cases of this character and those in which possession of, and dominion over, *private property* [italics ours] is taken for public use, like *Chambers*. v. *Cincinnati and Georgia Railroad*, 69 *Ga.* 320." In the opinion in the *Moore* case the court said: "The stoppage of all the improvements of the city by the stern writ of injunction is another and vastly more important question. Has he or any other citizen the right absolutely to stop the entire system of grades of a

whole street or of two streets, because his property will be damaged if the contemplated improvement, in the judgment of the authorities, be carried into effect? Is it not better that one man's property be incidentally damaged than that the city authorities be absolutely prohibited from grading the street? Is it not more in harmony with all law and reason that this be so, especially when whatever damage the one man sustains the municipality will be made to pay? It might damage the one man one thousand dollars to make the contemplated grade; it might damage the march of improvement in a great and growing city millions of money not to make it." The *Moore* case, on the request for a review, was reaffirmed in *Fleming* v. *Rome,* 130 *Ga.* 383 (61 S. E. 5), and in *Silvey* v. *Georgia &c. Co.,* 137 *Ga.* 468 (73 S. E. 629). We are not unmindful of the case of *L. & N. R. Co.* v. *Merchants &c. Bank,* 166 *Ga.* 310 (143 S. E. 506). That case involved damages to private property by a commercial steam railroad. Such damages stand upon a different footing from that of damages for public purposes in the case of a municipality or street railway. In *Athens &c. Co.* v. *Athens Foundry,* 129 *Ga.* 393, 399 (58 S. E. 891), this court said: "But commercial steam railroads receive legislative sanction to use a city's streets from altogether different considerations than those which apply to street railways." In the opinion will be found an elaborate discussion of the distinctions just made.

Nor have we overlooked the case of *Brown* v. *East Point,* 148 *Ga.* 85 (95 S. E. 962) where an injunction was sought to prevent the municipal authorities from reducing the width of a sidewalk. The facts in that case are not reported in the published volume, but inspection of the original record reveals that there was no question of the sidewalk being included in the original street or highway. The contention was that the sidewalk had either never been dedicated to the public use, or, if so, the dedication was limited to sidewalk purposes. We think we have shown above that petitioner has not been deprived of his private property in the sense that the word "deprived" is used in the due-process clause of the constitution. The petitioner shows that he paid to the city an amount assessed against him as an abutting owner to cover the cost of the sidewalk and a portion of the cost of the paving on the street proper. This payment did not give him any title to or con-

trol over such pavements or the right to have the respective pavements remain as laid. Whenever there arose a reasonable public necessity therefor, the municipality which possessed the dominant easement could make changes within legal and constitutional bounds. The changes here proposed are within such bounds.

The second and third headnotes do not require elaboration.

*Judgment affirmed. All the Justices concur, except Russell, C. J., who dissents.*

ATKINSON and HINES, JJ. We concur in the judgment of affirmance, on account of the ruling in *Moore* v. *Atlanta, 70 Ga.* 611 (4). Upon the question involved in that ruling the facts of this case are not distinguishable; and the decision there rendered, being by the entire bench of three Justices as then constituted, and having never been overruled or modified, is controlling in the present case.

RUSSELL, C. J., dissenting. I do not view the case presented by the present bill of exceptions in the light to which it presents itself to the majority of the court. The case as presented in the opinion of the majority does not appear to me as the case really presented by the record. It is altogether probable that I may be wrong in my concept of the law, since I differ from my learned and distinguished colleagues. However, even though the latter be true by reason that their views are supported by the greater weight of authority, I shall not falter in announcing from the bench my protest against any construction of the laws of Georgia which place it within the power of either private or municipal corporations to damage or destroy the property of even the humblest citizen for the benefit of public improvements, without affording him a remedy, either legal or equitable, adequate to give him justice. I am not unaware of the strong trend of modern decisions towards the sacrifice of puny personal rights to appease an overwhelming public cry for what is called the public good, and yielding to this cry has brought the highest rate of taxation and the largest municipal bonded indebtedness ever known in the history of our State. However, in my opinion, the law of this State and our very constitution of 1877 protect in some degree the private property of a citizen from seizure or damage, by the provision that no man's private property shall be taken or damaged for public purposes without just and adequate compensation being first paid. The

principle embodied in this provision of the constitution is so essentially just that it was applied several times by this court to the taking of private property for public uses, long before the adoption of the constitution of 1877. *Hall* v. *Boyd,* 14 *Ga.* 1; *Powers* v. *Armstrong,* 19 *Ga.* 427. Until the adoption of the constitution of 1877 provision had not been made in the organic law of the State to secure to one whose property was *damaged* for public purposes the same right which had always been conceded in case one's property was itself *taken* for public use. In the opinion of the majority there is a very exhaustive discussion of the qualifications upon the right of one whose property is taken for public purposes and of the conditions under which it may be taken. I shall not concern myself in any way with that phase of the question, because, as I see the record in this case, there is no contention on the part of the plaintiff that any of the lot on which his building is located at the corner of Hunter and Pryor Streets is sought to be taken or has been taken by the City of Atlanta for street purposes. Therefore it seems to me that authorities dealing with the power conferred by the General Assembly upon the City of Atlanta in its charter in regard to condemning property for the purpose of making a street are foreign to the question presented to the court in this case.

Upon the hearing of the application for an interlocutory injunction the testimony was undisputed that the plaintiff had a lease upon which he was receiving a rental of $750 per month for his building, and that the change of conditions and destruction of his former means of ingress and egress by reason of the proposed improvement had caused and would continue to cause him to be deprived of this income, as well as constitute a continuing trespass. It also appeared without contradiction that the city had not paid or tendered to pay any compensation to the plaintiff for this or any other damage. It is uncontradicted that the grade of the street under the proposed plan leaves the Hunter street entrance of the plaintiff's building from five to six feet below the grade of the street and above the floor of the store; and that four or five small stores on Pryor Street, as well as the stairway to the second story of the building, are subjected in a lesser degree to similar damage by the change in the grade of the street. It would serve no good purpose to recapitulate the different items of damage appearing in

the testimony, because upon principle the plaintiff is entitled to be compensated for the damages that are inevitably and essentially consequent to the improvement sought to be accomplished by the municipality, and to have this damage paid before the injury be inflicted, or, to say the least, that such damage as the city itself could not fail to see would ensue to the landlord whose tenants have been forced to leave the building should be paid or tendered before it attempted to destroy his income. The subject-matter is covered by the provision of the constitution to which we have referred, which as much demands that private property shall not be *damaged* for public purposes without just and adequate compensation being first paid as it makes provision for compensation in case the property itself is taken for public use. It can not be denied that a landlord's rents are property. If he is deprived of them, whether temporarily, or permanently, he is entitled to compensation according to the circumstances. As said by Mr. Justice Atkinson in *Pause* v. *Atlanta,* 98 *Ga.* 92, 100 (26 S. E. 489, 58 Am. St. R. 290), "The word ' damage ' embraces more than the mere physical taking of property, and is not restricted to cases where the owner is entitled to recover as for a tort at common law. 66 Cal. 492. It seems that this language is intended to cover all cases in which, even in the proper prosecution of a public work or purpose, the right of a person in property or the property itself is in a pecuniary way injuriously affected. 63 Texas, 467; 14 Neb. 550; 45 Ark. 429; 67 *Ga.* 386; 7 Col. 113; 10 Col. 403; 17 West Va. 396. The damages, therefore, that an individual may recover for injuries to his property need not necessarily be caused by acts amounting to a trespass, or by an actual physical invasion of his real estate; but if his property be depreciated in value by his being deprived of some right of user or enjoyment growing out of and appurtenant to his estate as the direct consequence of the construction and use of any public improvement, his right of action is complete, and he may recover to the extent of the injury sustained. C. & W. I. R. R. *v.* Ayers, 106 Ills. 511; East St. Louis *v.* O'Flynn, 19 App. Ct. Rep. (Ills.) 66. Accordingly it has been held that interfering with access to premises, by impeding or rendering difficult ingress or egress is such a taking and damaging as entitles the party injured to compensation under a provision for compensation where property is damaged. 22 Am. & Eng. Cor. Cases, 393; Cooley on

Const. Limit. p. 690, note 3 on same page, and cases there cited." The case from which the above quotation is taken was one in which there was no taking of physical property. The facts were practically identical with that portion of the complaint of the plaintiff in this case which relates to the loss of his rentals as long as the obstructions caused by the street improvement remain, either while being constructed or after their completion, except that in the *Pause* case the plaintiff was the tenant, whereas in the present case the plaintiff is the landlord. The City of Atlanta began the construction of a bridge by which, under the plan adopted, the entrance to Mrs. Pause's place of business would be and was in fact so far obstructed as practically to cut her off from the ordinary means of access to her business. Before the day upon which the door of her place of business was actually obstructed by the contemplated work, her business, in consequence of the obstruction to the entrance of her restaurant, became so unprofitable that she was compelled to abandon it and surrender her premises, by which she sustained damages. She was nonsuited upon the ground that she had shown no right of action against the city. In reversing that judgment the first question which arose was whether a leasehold interest in the premises was such property as comes within the provisions of art. 1, sec. 3, par. 1, of the constitution; and that question is important in this case, because the evidence is that the landlord's interest in this valuable lease, if not taken, has been absolutely destroyed, because it is uncontradicted that the tenant who paid him $750 per month was forced out of business and ipso facto became no longer liable for his rentals. Speaking for the court upon this point Mr. Justice Atkinson said: "A leasehold interest in premises for a definite term is property within the meaning of that word as it is employed in paragraph 1, section 3, article 1 of the constitution of this State, in which provision is made against the taking or damaging of private property for public purposes without just and adequate compensation being first paid. If a tenant be deprived of his leasehold interest in consequence of the appropriation by the public to public uses of the property 'upon which his leasehold estate rests, it can not be doubted that he is deprived of his property; and hence we conclude, that the holder of a lease has such an interest in premises as will enable him to maintain an action for damages resulting to his leasehold estate,

sustained in consequence of the construction of a duly authorized public improvement, whether such damage results from the negligence of the municipal authorities or otherwise." I am of the opinion that the evidence without any question shows that the private property, at least the leasehold interest, of the plaintiff has been not only damaged but actually destroyed and obliterated by the public improvement, which, however necessary and beneficial it may be to the City of Atlanta as a whole, ought not, under the constitution, to be permitted to impose injury upon any private citizen unless and until just and adequate compensation has been paid, as provided in our bill of rights.

The word "damage" in paragraph 1 of section 3 of article 1 of the constitution was construed for the first time in *City of Atlanta* v. *Green,* 67 *Ga.* 386. Mr. Justice Speer, delivering the opinion of the court, said: "In previous constitutions the words varied from the present: ' Private property shall not be taken for public use without just compensation ' were the words ordinarily employed. But under the constitution of 1877 further protection is sought to be given to the property of the citizen, and now ' it shall not be taken or *damaged* for public use without just compensation. ' The article does not define whether the damage shall be immediate and direct or consequential. Any damage to property for public use must receive its compensation. It may be, and will no doubt often occur, that the consequential damage may impose a more serious loss upon the owner than a temporary spoliation or invasion of the property. We must presume the convention intended that any damage, whether direct or consequential, done to property for public use, must be compensated for. Now this was private property, and the improvement of the street was being made for public use; and if the property was damaged thereby, why would not this plaintiff below be entitled to just compensation for such damages? We think, therefore, the court did not err in instructing the jury that the former rule of law which once obtained was altered and changed by the clause in the bill of rights, heretofore cited, in the constitution of 1877. In the constitution of Illinois the words were very similar to those contained in our own. That provision was: ' Private property shall not be taken or damaged for public use without just compensation. ' In construing the meaning of these words the Supreme Court of that

State held: 'That if injury to private property is sustained by changing the grade of a street, the municipal corporation causing the same to be made will be liable to the owner in damages.' 83 Ill. 535; 67 Ib. 477; 82 Ib. 337. We think a reasonable construction of our constitution, aided as we are by the interpretation of like words in the constitution of Illinois by the Supreme Court of that State, fully establishes the rule, that if a person is damaged in making such improvements, he may recover."

I am at this time passing by any damages which may accrue in depreciation of the lot and building, because in the *Green* case, supra, the court laid down the now well-settled rule that any increase in the market value of the property itself caused by the improvement may be set off against any damages which may have resulted to the physical lot and buildings. I am concerning myself in considering whether the court erred in refusing altogether an interlocutory injunction of any nature, in view of the fact that the evidence clearly disclosed an immediate and direct damage to the use of the property by the destruction of the valuable rents accruing from his relation as a landlord. Such damage resulting from or consequent upon a public improvement, no matter how necessary or judiciously effected, as arise from invasion of an owner's right to enjoy the free access or egress or the former use or income of his property, are not affected by the fact that the market value of the realty itself may have been enhanced. In *Campbell* v. *Metropolitan Street Railroad. Co.*, 82 *Ga.* 320 (1 *a*) (supra), this court again held: "Under the present constitution, whether the property is taken or not, if it is damaged by the construction or operation of improvements made for the use of the public, its owner can recover whatever damage it has actually sustained." In that case, as was shown by the evidence in the case at bar, the plaintiff by reason of the construction of a public improvement was virtually deprived of ingress and egress to and from his property, alleging that thereby he was damaged $2000; and this court held that if these allegations were true, "we do not see why the plaintiff would not be entitled to recover." The court then quoted approvingly the following from Street Railway v. Cumminsville, 14 Ohio St. 523; " 'There exists in the owners of adjoining lots a private right to have free access to their lands and buildings from the street, as the same was and would have continued to be

according to the mode of its original use and appropriation by the public; and there can be no change of such mode and adaptation of the streets to new vehicles and methods of transportation which shall materially impair or destroy such right, unless by the consent of the owners, or upon the payment of due compensation to them.'" This court followed this ruling with the following opinion and comment: "The Supreme Court of Wisconsin, in the case of Hobart *v.* The Milwaukee City Railroad Co., 27 Wis. 200 [9 Am. R. 461], after copying the above extract (14 Ohio St. 523), approves it as follows: 'It is a doctrine which imposes no unreasonable restriction upon the rights of the public in the use of its streets and highways, and which at the same time affords that protection to private or individual rights which the spirit and principles of our constitution and form of government require. It is possible, as has been suggested, that it may sometimes prove embarrassing in practice to determine when and to what extent the private rights of adjoining owners have been infringed, but such embarrassments are inseparable from the consideration and determination of all similar questions. The difficulties in the way of ascertaining and determining them by no means disprove their existence or show that they ought not to be recognized and enforced.' We quote these extracts with approval, and think they are even more applicable in this State than in those States, because the new rule as to damage to private property is not expressly embraced in the constitutions of those States."

The record in this case plainly shows that there has been no physical taking of even as much as an inch of the lot or building affected by the construction of which complaint is made; but the decision of this court in a very recent case is, in my opinion, directly opposite to the ruling of the trial court upon the same question, and contrary to the opinion of the majority as expressed in the present case. I refer to *L. & N. Railroad Co.* v. *Merchants &c. Bank,* 166 *Ga.* 310 (143 S. E. 506), in which this court affirmed a judgment granting an interlocutory injunction, where the sole damage to the petitioner's property was caused by interference with its rights of ingress and egress, just as the same injury is one of the principal causes of the damages alleged in the case now before us. The railroad-track in question had previously run in front of the property for a long number of years. The

change was not an altogether new and complete metamorphosis, as in the case at bar. The track which at times obstructed the entrance to the plaintiff's bank was only sought to be placed five feet nearer the sidewalk than it was before. And yet this court, in a unanimous decision delivered by Mr. Justice Hill, quoting from the previous ruling of this court in *Athens Terminal Co.* v. *Athens Foundry,* 129 *Ga.* 393 (3, 4) (supra), held that "Although the General Assembly may empower a commercial railroad company to occupy the streets of a town or city with the consent of the municipal authorities, yet such permission is subject to the constitutional restraint that 'private property shall not be taken or *damaged* for public purposes without just and adequate compensation being first paid.' If the property of an abutting landowner will be damaged by the laying and use of a track in the street, the railroad company must first pay or tender to such property owner just and adequate compensation for the damages consequential upon the construction of the track and the uses to which it will be put. Upon failure to pay or tender the amount of such damages, equity will enjoin the construction of the track." It was further held that "If the proposed change in the connection of the spur-track with the main-line track as relocated would cause the spur-track in front of plaintiff's property to be nearer to said property than as originally located, the effect of which would be to cause consequential damage to the plaintiff, it would be the duty of the railroad company to ascertain and pay or tender all such consequential damages; and, if the railroad company proceeded to make a change in the location of the spur-track without having paid or tendered payment of the consequential damages to the plaintiff, equity will enjoin such change in the location of the spur-track." In view of the evidence before the trial court, and it being admitted that in the case at bar there has been no tender to pay any damages whatsoever, although to my mind the evidence of some damage is clear, I can but adhere to my views as announced by the court in the case just cited; from which necessarily results my opinion that the court erred in refusing altogether an interlocutory injunction, regardless of consequential damages which may or may not eventually be inflicted.

This court has many times drawn attention to a difference between injury of the rental value as distinguished from injury to

438

the market value of property. Among many cases that could be cited are *Davis* v. *East Tenn. Ry. Co.*, 87 *Ga.* 605 (13 S. E. 567) ; *Mayor &c. of Brunswick* v. *Tucker*, 103 *Ga.* 233 (29 S. E. 701) ; *Farkas* v. *Towns*, 103 *Ga.* 150 (29 S. E. 700, 68 Am. St. R. 88) ; *Mayor &c. of Waycross* v. *Houk*, 113 *Ga.* 963 (39 S. E. 577). In *Mayor &c. of Brunswick* v. *Tucker*, Mr. Justice Cobb, quoting from Chief Justice Bleckley, said: " 'The scope of the plaintiff's action embraces two classes of damage : damage to the corpus or freehold, and damage by diminishing the annual value of the premises for use. The evidence shows very conclusively that the market value of the property was increased, rather than diminished, by the location and use of the railroad in the street. The plaintiff can recover nothing on that score, for the reason, if for no other, that she proved no damage of that class. But the evidence did tend to show that she had sustained damage by the diminished annual value of the premises for use in their present condition. The court in its charge to the jury seems not to have recognized this element as a basis for recovery. We think this was error. A wrong-doer can not set off increase of market value caused by his unlawful act against loss of rents and profits occasioned thereby. . . Injury to rental value is, or may be, separate and distinct from injury to market value. The measure of damages in an action for a nuisance affecting real estate is not simply the depreciation of the property. . . The owner of the property is entitled to use it in its present condition, and one who unlawfully hinders, obstructs, or interferes with such use can not appeal to the increased market value which might be realized if the property were devoted to other purposes, and take credit for such increase by way of indirect set-off against the direct loss or injury which he has occasioned.' " In the *Houk* case, supra, after calling attention to numerous cases where the evil did not consist in a physical invasion of the premises, Mr. Presiding Justice Lumpkin said: "Certainly, therefore, a flagrant abuse of power on the part of municipal authorities may, upon a proper petition filed by one having a peculiar interest in the matter, be enjoined before irreparable injury ensues. The evidence relied on by the plaintiff in the present case was such as to authorize the granting of the injunction prayed for." Other cases in which the broad assertion that a municipality has absolute control of its streets is denied are

*Butler* v. *Thomasville*, 74 *Ga.* 570, *City of Atlanta* v. *Warnock,* 91 *Ga.* 210 (18 S. E. 135, 23 L. R. A. 301, 44 Am. St. R. 17), and *Holmes* v. *Atlanta,* 113 *Ga.* 761 (39 S. E. 458). It is my opinion, just as said by Justice Lumpkin in the *Houk* case, that the evidence for the plaintiff in the present case required the grant of an injunction as to the interference with his right of access, ingress, and egress to his property, and that under the ruling in the case of *L. & N. Railroad Co.* v. *Merchants &c. Bank,* supra, the city should not be permitted, in violation of the constitution, to endamage a citizen even in the respect referred to until just and adequate compensation has been made.