312 Ga. 548
FINAL COPY

S20G1410.  DEPARTMENT OF TRANSPORTATION v. MIXON.

PETERSON, Justice.

The Georgia Constitution provides that, as a general matter, "private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid." Ga. Const. of 1983, Art. I, Sec. III, Par. I (a) (the "Just Compensation Provision"). This Court has long held that this Provision waives sovereign immunity for inverse condemnation claims seeking monetary compensation.[1] In this case, the Court of Appeals relied on that precedent to conclude that the Provision also waives sovereign immunity for inverse condemnation claims seeking injunctive relief. See *Dept. of Transp. v. Mixon*, 355 Ga. App. 463, 465 (1), 467 (3) (844

---

[1] By "inverse condemnation," we mean an action brought by a private landowner under the Just Compensation Provision alleging the taking or damaging of the private property for public purposes without the initiation of eminent domain proceedings. See *Woodside v. Fulton County*, 223 Ga. 316, 319-320 (1) (a) (155 SE2d 404) (1967), overruled on other grounds by *Powell v. Ledbetter Bros.*, 251 Ga. 649, 652 (307 SE2d 663) (1983).

SE2d 524) (2020). We granted certiorari, and we conclude that the Just Compensation Provision waives sovereign immunity for claims seeking injunctive relief in two circumstances: (1) where the Just Compensation Provision's requirement of prepayment before a taking or damaging applies and has not yet been met; or (2) where the authority effecting a taking or damaging has not invoked the power of eminent domain. This waiver under the Just Compensation Provision, however, allows an injunction only to stop the taking or damaging until such time as the authority fulfills its legal obligations that are conditions precedent to eminent domain. Because Mixon's claim for injunctive relief — at least in this procedural posture — falls into at least one of the two categories of situations in which the Just Compensation Provision acts as a waiver of sovereign immunity for injunctive relief, we affirm.

1.    *Background.*

Cathy Mixon sued the Georgia Department of Transportation ("GDOT" or "the State"), bringing claims of nuisance and inverse condemnation based on alleged flooding on her property following a

road-widening project. Mixon claims that GDOT's failure to maintain its storm water drainage systems has resulted in regular flooding, drainage, and erosion problems "within and around" her property. Her complaint seeks "just and adequate compensation" for the alleged taking, other money damages, attorney fees, and a permanent injunction "to prevent future nuisance and continual trespass[.]" GDOT filed a motion to dismiss, which the trial court granted in part and denied in part. In particular, the trial court dismissed any claims arising from professional negligence (due to the lack of an expert affidavit, as required by OCGA § 9-11-9.1) and any claims arising more than four years prior to the filing of the complaint (due to the applicable statute of limitations). The trial court otherwise denied GDOT's motion. Among other things, the trial court rejected GDOT's argument that sovereign immunity barred Mixon's claims.

The Court of Appeals granted GDOT's application for interlocutory appeal and then affirmed, holding in relevant part that the trial court did not err in ruling that sovereign immunity is

3

waived for Mixon's claims for damages and injunctive relief. See

*Mixon*, 355 Ga. App. at 465 (1), 467 (3). As to Mixon's inverse

condemnation claim for damages, the Court of Appeals properly

applied Georgia appellate precedent holding that the Just

Compensation Provision waives sovereign immunity for damages

claims premised on a taking or damaging of private property. See id.

at 465 (1) (citing *Ga. Dept. of Natural Resources v. Center for a*

*Sustainable Coast*, 294 Ga. 593, 600 (2) (755 SE2d 184) (2014), and

*Bray v. Dept. of Transp.*, 324 Ga. App. 315, 317 (2) (750 SE2d 391)

(2013)). GDOT also argued that sovereign immunity barred Mixon's

claim for injunctive relief. But the Court of Appeals rejected that

argument by merely referring back to its analysis as to whether

Mixon's damages claim was barred by sovereign immunity:

> As discussed in greater detail in Division 1, sovereign
> immunity does not apply to Mixon's claim for inverse
> condemnation arising out of a nuisance. Accordingly, the
> trial court did not err in refusing to apply the doctrine of
> sovereign immunity to dismiss Mixon's claim for
> injunctive relief.

*Mixon*, 355 Ga. App. at 467 (3).

We granted GDOT's petition for a writ of certiorari to address

4

whether sovereign immunity had been waived for Mixon's claim for injunctive relief. We affirm, although with different reasoning and a narrower holding.

2. *Analysis.*

This case involves the interaction between two longstanding principles of Georgia law. The first principle, known as sovereign immunity, provides that the State cannot be subjected to any legal action without its express consent. See Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e). The second principle, embodied in the Just Compensation Provision, provides that although the government may take or damage private property for public use, it must pay the property owner "just and adequate compensation," and that payment generally must precede the taking or damaging unless an exception applies. Ga. Const. of 1983, Art. I, Sec. III, Par. I (a).

We thus review the standard for waiver of sovereign immunity and our prior treatment of the Just Compensation Provision, particularly with respect to the extent to which that Provision acts as a waiver of sovereign immunity. We conclude that the Just

5

Compensation Provision waives sovereign immunity for some claims of injunctive relief. We also recognize that textual changes to the Just Compensation Provision — with which this Court has not grappled previously — may limit the scope of that waiver for claims for injunctive relief, but not in a way that affects this case in its current posture.

(a) *A constitutional provision may waive sovereign immunity by necessary implication, not merely by explicit language.*

Article I, Section II, Paragraph IX of the Georgia Constitution states that, except as otherwise provided in that paragraph, "sovereign immunity extends to the state and all of its departments and agencies" and "can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e).[2] This provision reserved constitutionally

_____

[2] The Georgia Constitution also provides that "[t]he General Assembly may waive the immunity of counties, municipalities, and school districts by law." Ga. Const. of 1983, Art. IX, Sec. II, Par. IX. Although the immunity of these entities is not directly at issue in this case, much of the relevant case law cited in this opinion comes from the context of county or municipal immunity. As we recently explained, the scope of whatever waiver the Just Compensation

the common-law doctrine of sovereign immunity as traditionally understood by Georgia courts. See *Lathrop v. Deal*, 301 Ga. 408, 423 (II) (C) (801 SE2d 867) (2017). That common-law doctrine "was understood . . . as a principle derived from the very nature of sovereignty" and generally provided that "[t]he State could not, without its own express consent, be subjected to an action of any kind." Id. at 412-413 (II) (A) (citation and punctuation omitted). "[A]bsent some waiver by the Georgia Constitution itself or the statutory law, the doctrine of sovereign immunity bars suits for injunctive . . . relief against the State, its departments, and its officers in their official capacities[.]" *Bd. of Commrs. of Lowndes County v. Mayor and Council of the City of Valdosta*, 309 Ga. 899, 903 (2) (a) (848 SE2d 857) (2020).

"The burden of demonstrating a waiver of sovereign immunity rests upon the party asserting it." *Ga. Dept. of Labor v. RTT Assocs.,*

Provision provides is not limited to the sovereign immunity of the State, but extends to other sorts of governmental immunity as well, including municipal immunity. See *Gatto v. City of Statesboro*, 312 Ga. ___, ___ (2) (860 SE2d 713) (2021).

*Inc.*, 299 Ga. 78, 81 (1) (786 SE2d 840) (2016). Implied waivers of sovereign immunity are generally disfavored. See *Ga. Dept. of Corrections v. Couch*, 295 Ga. 469, 473-474 (2) (759 SE2d 804) (2014); *Colon v. Fulton County*, 294 Ga. 93, 95 (1) (751 SE2d 307) (2013), overruled on other grounds by *Rivera v. Washington*, 298 Ga. 770, 778 n.7 (784 SE2d 775) (2016); *Currid v. DeKalb State Court Probation Dept.*, 285 Ga. 184, 186-187 (674 SE2d 894) (2009). But we have recognized implied waivers when the implication necessarily arises. See *Colon*, 294 Ga. at 95-96 (1) (sovereign immunity does not bar claims under whistleblower retaliation statute, OCGA § 45-1-4, given that statute specifically creates a right of action against the government that would otherwise be barred by sovereign immunity and expressly states that an aggrieved party may collect money damages against the government in connection with a successful claim); *SJN Properties, LLC v. Fulton County Bd. of Assessors*, 296 Ga. 793, 799 (2) (b) (ii) & n.6 (770 SE2d 832) (2015) (sovereign immunity does not preclude claims for mandamus relief under OCGA § 9-6-20 given express statutory

8

authorization for actions that by their nature may be sought only against public officials). Similarly, a constitutional provision may waive sovereign immunity by necessary implication. See *State Hwy. Dept. of Ga. v. McClain*, 216 Ga. 1, 4 (2) (114 SE2d 125) (1960) ("It is, of course, well settled that a county in virtue of being a subdivision of the State is not liable to suit for any cause of action unless made so by statute *or by necessary implication from some provision of the Constitution.*" (emphasis supplied)). And it is on this theory that we have indicated that the Just Compensation Provision waives sovereign immunity as to claims for money damages flowing from a nuisance. See *Center for a Sustainable Coast*, 294 Ga. at 600 (2) (explaining that the previously recognized "nuisance" exception to sovereign immunity "was not an exception at all, but instead[ ] a proper recognition that the [Georgia] Constitution itself requires just compensation for takings and cannot, therefore, be understood to afford immunity in such cases").

(b) *The text and context of the Just Compensation Provision show that it waives sovereign immunity for certain claims for injunctive relief.*

9

Like sovereign immunity, the principle that private property may not be appropriated by the government without compensation also was a longstanding part of the common law. We applied this principle even before it was explicitly included in the Georgia Constitution. See *Parham v. Justices of Inferior Court of Decatur County*, 9 Ga. 341, 349 (1851) ("It is not, therefore, necessary to go to the Federal Constitution for [the principle]. It came to us with the Common Law — it is part and parcel of our social polity — it is inherent in ours, as well as every other free government. At Common Law, the Legislature can compel the use of private property, but not arbitrarily. It treats with the citizen, as owner, for the purchase, and whilst he cannot withhold it upon offer of compensation, they cannot seize it without such tender."); *Young v. McKenzie*, 3 Ga. 31, 44 (1847) ("[The federal Takings Clause, see U.S. Const. amend. V], which declares 'private property shall not be taken for public use without just compensation,' does not create or declare any *new principle of restriction*, either upon the legislation of the National or State government, but simply recognized the existence of a great

common law principle, founded in natural justice, especially applicable to all republican governments, and which derived no additional force, as a *principle*, from being incorporated into the Constitution of the United States." (emphasis in original)).

Early on, some key concepts based on this principle began to emerge in our case law applying the common law right — i.e., even before the Just Compensation Provision entered the Georgia Constitution in 1861. See Ga. Const. of 1861, Art. I, Par. XXI. First, the notion that payment must be made (or at least offered) *prior* to a taking was part of the right. See *Parham*, 9 Ga. at 356 ("The authorities agree mainly in this, that the compensation, or offer of it, must precede or be concurrent with the seizure and entry upon the property to construct the road."); *Young*, 3 Ga. at 45 ("It is admitted that the Irwinton Bridge Company have taken the *private property* of the defendants, for the erection of the eastern abutment of their bridge. Have they made them *just compensation* therefor as required by the Constitution? We think not, and before they can be deprived of their land, for the *permanent use* of the bridge, this must

11

be done." (emphasis in original)).

Second, private landowners could obtain an injunction against government actors to stop a taking where compensation had not been provided. See *Parham*, 9 Ga. at 344-355 (motion for injunction as to unenclosed lands should have been granted given that statutory scheme made no provision for compensating owner upon taking of such lands). But we allowed such claims with the caveat that injunctions could be obtained only if the landowners had satisfied whatever requirements the law placed on them to obtain compensation through established procedures. See id. at 355-358 (motion for injunction as to enclosed lands properly denied on basis that landowner had not made application pursuant to statutory requirements). Similarly, such an injunction would issue only pending government satisfaction of its obligations under such procedure. See *Young*, 3 Ga. at 45 ("The landholder stands upon all his rights, and may enforce them by all legal remedies, *until* he is divested of his title for the use of the public in the manner prescribed by the Act of Incorporation." (emphasis supplied)). Relatedly, we

12

held that the government did not have the power to take private property through a procedure that did not provide for compensation — in such a case, it was not exercising its power of eminent domain at all, and thus could be liable for damages. See *Parham*, 9 Ga. at 354-355; see also *Markham v. Brown*, 37 Ga. 277, 281-283 (1867) (county justices who took possession of plaintiff's land for smallpox hospital can be liable in trespass given that they acted under a statute that did not provide for compensation).[3]

Since the Just Compensation Provision first entered the Georgia Constitution in 1861, it has undergone frequent textual changes, but for its first century of existence had always provided that a government entity generally must pay just compensation *before* taking private property. See Ga. Const. of 1861, Art. I, Par. XXI. ("In cases of necessity, private ways, and the right to carry water over land for the purpose of mining and draining, may be

---

[3] Although *Markham* was decided after the Just Compensation Provision first appeared in the Georgia Constitution, it appeared to rely only on the "great fundamental principle" as embodied in the federal Takings Clause. See *Markham*, 37 Ga. at 282.

granted upon just compensation being first paid; and with this exception, private property shall not be taken except for public use; and then, only upon just compensation; such compensation, except in cases of pressing necessity, to be first provided and paid."); Ga. Const. of 1865, Art. I, Par. XVII ("In cases of necessity, private ways may be granted upon just compensation being first paid, and with this exception private property shall not be taken save for public use and then only on just compensation to be first provided and paid unless there be a pressing unforeseen necessity in which event the General Assembly shall make early provision for such compensation."); Ga. Const. of 1868, Art. I, Sec. XX ("Private ways may be granted upon just compensation being paid by the applicant."); Ga. Const. of 1877, Art. I, Sec. III, Par. I ("In cases of necessity, private ways may be granted upon just compensation being first paid by the applicant. Private property shall not be taken, or damaged, for public purposes, without just and adequate compensation being first paid."); Ga. Const. of 1945, Art. I, Sec. III, Par. I (same).

14

Beginning in 1960, Georgians approved more significant textual changes to the Just Compensation Provision that limited the circumstances in which payment before taking or damaging is constitutionally required, while retaining the default prepayment requirement. A 1960 constitutional amendment preserved the previous language — "Private property shall not be taken, or damaged, for public purposes, without just and adequate compensation being first paid" — but also included a new exception to the prepayment requirement:

> [W]hen private property is taken or damaged for public road and street purposes by the State and the counties and the municipalities of the State, just and adequate compensation therefor need not be paid until the same has been finally fixed and determined as provided by law, but such just and adequate compensation shall then be paid in preference to all other obligations except bonded indebtedness.

Ga. L. 1960, p. 1225; see also Ga. L. 1961, p. 755. This change was carried over into the 1976 Constitution. See Ga. Const. of 1976, Art. I, Sec. III, Par. I (1). A further amendment ratified in 1978 added "public transportation purposes" to takings and damaging that were exempt from the prepayment requirement. See Ga. L. 1979, pp.

15

1865-1866; Ga. L. 1978, pp. 2318-2319. And the 1983 Constitution included an amended version of the Just Compensation Provision that retained the first-paid language but further limited the circumstances under which it would apply, including exceptions for "public road or street purposes, or for public transportation purposes, or for any other public purposes as determined by the General Assembly[.]" Ga. Const. of 1983, Art. I, Sec. III, Par. I (b). This remains the operative language today.[4]

---

[4] We note that at least some parts of the complex statutory scheme regarding eminent domain also appear to require payment to precede a taking. See, e.g., OCGA § 22-1-5 ("Except in cases of extreme necessity and great urgency, the right of eminent domain cannot be exercised without first providing for just compensation to the owner for the interference with his exclusive rights."); OCGA § 22-2-81 ("The entering of an appeal and the proceedings thereon shall not hinder or delay in any way the condemnor's right to use the condemned property or interest, provided that the condemnor pays or tenders to the owner the amount of the award and, in case of the refusal of the owner to accept the award, deposits the amount awarded with the clerk of the superior court for the benefit of the owner."); OCGA § 32-3-2 ("All acquisition of property or interests for public road and other transportation purposes shall proceed under the methods set out in this article *and in Title 22*.") (emphasis supplied); OCGA § 32-3-7 (a) (title to condemned property vests in the condemnor "[u]pon the filing of the declaration of taking and the deposit into court, which deposit shall be made at the time the declaration of taking is filed to the use of the persons entitled thereto, of the sum of money estimated in the declaration by the condemning authority to be just compensation"). But the extent to which the General Assembly has exercised its constitutional power to permit the exercise of eminent domain without prepayment has not

16

Notwithstanding these changes, it is fair to say that the default constitutional requirement that compensation must be paid *prior* to a taking remained in the Just Compensation Provision throughout. And as early as 1881, we held that the Just Compensation Provision waived governmental immunity for some claims for monetary relief. See *City of Atlanta v. Green*, 67 Ga. 386, 387-389 (1) (1881). In *Green*, we construed the 1877 version of the Just Compensation Provision, which required the payment of compensation not only before private property was "taken" for public purposes, but also before it was "damaged." Ga. Const. of 1877, Art. I, Sec. III, Par. I. We concluded that this change abrogated a prior rule that municipal corporations were not liable for consequential damages caused by the raising and lowering of street grades. See *Green*, 67 Ga. at 387-389 (1). And in a case decided shortly thereafter — without addressing sovereign immunity, as no government entity was a party to the case — we held that the Just Compensation Provision allowed an injunction to

been briefed or argued, and we express no opinion on that question. In any event, the State does not point to any statute permitting the taking or damaging of Mixon's property without prepayment.

17

stop a taking under the authority of the State where compensation had not yet been paid. See *Chambers v. Cincinnati & Ga. R.R.*, 69 Ga. 320, 324-326 (1882).

We acknowledged this case law in our 1883 decision in *Moore v. City of Atlanta*, 70 Ga. 611 (1883), which addressed whether the Just Compensation Provision waived governmental immunity for a claim of injunctive relief. But *Moore*, which involved a claim for an injunction against a street grading project performed on public property with only indirect effects on private property that could be compensated by money damages, distinguished *Chambers* as involving an impending seizure of private property. See *Moore*, 70 Ga. at 615-616 (4). And instead of engaging with the text of the Just Compensation Provision to answer the question of whether governmental immunity precluded a claim for injunctive relief, the *Moore* opinion provided equitable reasons for distinguishing the claim for money damages at issue in *Green*: although it was fair to pay an individual landowner for his damages, permitting an injunction against a particular street grading "might damage the

18

march of improvement in a great and growing city[.]" Id. at 615 (4).[5]

We subsequently relied on *Moore* to bar injunctive relief in apparently similar cases. See, e.g., *Floyd County v. Fincher*, 169 Ga. 460, 463 (150 SE 577) (1929); *Brown v. City of Atlanta*, 167 Ga. 416, 428 (145 SE 855) (1928); *Fleming v. City of Rome*, 130 Ga. 383, 383-384 (61 SE 5) (1907). But we allowed claims for injunctive relief against government entities in other cases, particularly those involving municipalities' discharge of sewage onto private land. See, e.g., *Mayor & Council of Waycross v. Houk*, 113 Ga. 963, 964-965 (39 SE 577) (1901); *Butler v. Mayor, Etc. of Thomasville*, 74 Ga. 570, 571, 575-576 (2) (1885). And in 1968, we held in *McFarland v. DeKalb County*, 224 Ga. 618, 618-619 (1) (163 SE2d 827) (1968), that a private landowner could pursue injunctive relief against a county

---

[5] We note that granting injunctive relief requires a highly case-specific balancing of the equities. See *Brown v. Tomlinson*, 246 Ga. 513, 515 (272 SE2d 258) (1980) ("Among the duties of a trial judge in making a decision on an injunction case is the duty to balance the equities."). By relying heavily on equitable concerns in concluding that injunctive relief was barred by governmental immunity, *Moore* may have conflated the issue of immunity with whether injunctive relief was available on the merits. Consideration of such equitable concerns is often necessary in determining whether injunctive relief is warranted on the merits. But such merits considerations are not part of the analysis of whether injunctive relief is barred by governmental immunity.

19

accused of "dumping" water in sufficient quantities such that it amounted to a trespass that constituted a taking or damaging of property.

These post-*Moore* cases allowing injunctive relief largely did not grapple explicitly with the question of governmental immunity. But shortly before ratification of the 1974 constitutional amendment conferring constitutional status on sovereign immunity, we squarely rejected arguments that governmental immunity bars claims for injunctive relief in the inverse condemnation context, while attempting to make sense of apparent inconsistencies in our case law. In *Baranan v. Fulton County*, 232 Ga. 852, 856 (209 SE2d 188) (1974), we held that a trial court had erred in concluding that a county can never be enjoined from maintaining a continuing nuisance. Recognizing that "it may not be possible to reconcile all that has been said in the numerous cases dealing with injuries to private property by public bodies," id. at 855, we attempted to draw a distinction between two lines of cases. In one line of cases, including *Moore*, we held that "extensive public improvements will

not be enjoined because consequential damages have not been paid to property owners[.]" *Baranan*, 232 Ga. at 855. In the other line of cases, this Court held that a court may enjoin "a public improvement [that] has the effect of creating a continuing nuisance on private property[.]" Id.

In *Baranan*, the plaintiff brought a claim for injunctive relief against drainage-system changes that allegedly created a continuing nuisance by increasing the flow of surface water on private property. See id. at 853. Based on the categorization of prior case law, we rejected the defendant county's invocation of immunity, which was based on a statute that provided that "[a] county is not liable to suit for any cause of action unless made so by statute." Id. at 856 (citing former Code § 23-1502).[6] In so doing, we relied on "the principle that the right of action would arise by necessary implication from" the Just Compensation Provision. Id.

In those cases examined by *Baranan* in which injunctive relief

---

[6] This statutory provision remains in the Georgia Code at OCGA § 36-1-4.

was disallowed, there had not been a taking of private property at all, nor even a trespass that damaged private property, and so injunction of government action was not available. See *Moore*, 70 Ga. at 615-616 (holding the grading of the city's streets and sidewalks, although inconvenient to the adjacent landowner, was not a taking because "the city is grading its own sidewalks" and "it is upon its own soil"); *Brown v. Atlanta Ry. & Power Co.*, 113 Ga. 462, 476 (4) (39 SE 71) (1901) (trial court's refusal to enjoin the running of streetcars in front of plaintiff's property was "in effect a finding that it would not be damaged"); *Fleming*, 130 Ga. at 390 (no injunction where grading of street allegedly left plaintiff's property "down in a hole"); *Brown*, 167 Ga. at 421 (no injunction for alleged temporary obstruction of ingress and egress to property); *State Hwy. Dept. v. Strickland*, 213 Ga. 785, 787-788 (102 SE2d 3) (1958) (error to enjoin installation of concrete curbs on public right of way in front of plaintiffs' property that allegedly would prevent trucks access to loading dock).

By contrast, the inverse condemnation cases in which

22

injunctive relief was available involved encroachments on private land such that they could amount to a trespass. See *Butler*, 74 Ga. at 574 (discharge of sewage on plaintiff's land); *City of Atlanta v. Warnock*, 91 Ga. 210, 214 (18 SE 135) (1892) (evidence that sewer manholes in street adjacent to plaintiff's property emitted large amount of poisonous gases); *City of Atlanta v. Williams*, 218 Ga. 379, 379-380 (128 SE2d 41) (1962) (evidence that county's installation of catch basins and sewer drains near plaintiff's property caused filthy water to collect on property). In considering today the cases sorted by *Baranan*, we do not necessarily agree that each case was rightly decided or that *Baranan*'s categorization of them was perfect.[7] But

---

[7] It is difficult to harmonize some of the cases that held that no injunctive relief was available because private property was not taken, but suggested that the plaintiff nonetheless might seek monetary damages. See *Moore*, 70 Ga. at 614 (3); *Brown*, 167 Ga. at 428. As noted above, *Moore* may have conflated the issue of immunity with equitable concerns going to the merits of a claim for injunctive relief. We need not resolve this apparent incongruity in order to decide this case, given that this case alleges physical damage to the plaintiff's property. But we question the continued viability of cases that suggest that a government entity is immune from injunctive relief over an appropriation of private land sufficiently significant to give rise to liability for money damages. This is especially so if certain government regulations can take or damage private property even in the absence of any physical intrusion on that property. Cf. *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 414-416 (43 SCt 158, 67 LE 322) (1922) (discussing regulatory takings).

we need not conclude either of those things to recognize the continuing viability of the broad distinction we identified in *Baranan*.

What is important is that, as of the time *Baranan* was decided, this Court had held that the Just Compensation Provision's language — "[p]rivate property shall not be taken, or damaged, for public purposes, without just and adequate compensation being first paid" — waived sovereign immunity for inverse condemnation claims for injunctive relief to stop a government encroachment on private land that amounted to a trespass, until the property is condemned. And that holding was largely consistent with the body of case law preceding it, dating back to the previous century. See, e.g., *Butler*, 74 Ga. at 575-576 (2). It is of no matter that the earliest cases largely involved outright acquisition of private property, as opposed to a physical invasion that merely damaged the property, given that those early cases predated the 1877 change to the Just Compensation Provision that applied a prepayment requirement to both "taking" and "damaging." See *Brown*, 167 Ga. at 424 ("Even

24

then it would be a nice question as to whether such an appropriation should not more properly be termed a 'damaging' than a 'taking.' In either event compensation would have to be paid, and that is the material thing in such a matter.").

Given the textual changes to the Just Compensation Provision that followed, particularly in 1960, 1978, and 1983, we must bear in mind that we cannot apply uncritically our decisions interpreting old versions of a constitutional provision to new language. See *Stratacos v. State*, 293 Ga. 401, 408 (2) (b) n.10 (748 SE2d 828) (2013) ("[I]t is always risky for courts to rely on a precedent interpreting a statute or other legal text without first examining whether the legal text on which the precedent was based has been revised and then considering the effect of any such change."); cf. *Elliott v. State*, 305 Ga. 179, 184-187 (II) (B) (824 SE2d 265) (2019) (a constitutional provision that is readopted *without material change* into a new constitution and that has received a consistent and definitive construction is presumed to carry forward that consistent construction). But such decisions construing prior

25

versions of a provision often provide important context, particularly if the pertinent language is similar, in understanding the meaning of a more recent version of that provision. See *Elliott*, 305 Ga. at 187 (II) (B) (in determining the meaning of a particular legal phrase, we consider the broader context in which the text was enacted, including other law — constitutional, statutory, decisional, and common law alike — that forms the legal background of the constitutional provision).

For this reason, it is significant that in November 1974, just one month after *Baranan* was decided, the voters of Georgia enshrined the then-existing law of sovereign immunity into the state Constitution by way of an amendment. See *Lathrop*, 301 Ga. at 420 (II) (B). The 1974 amendment was then carried forward into the Constitution of 1976. See id. (citing Ga. Const. of 1976, Art. VI, Sec. V, Par. I). And that Constitution also retained the same version of the Just Compensation Provision at issue in *Baranan*. See Ga. Const. of 1976, Art. I, Sec. III, Par. I (1). *Baranan*, consistent as it was with prior Georgia case law allowing injunctions to stop illegal

26

government taking of private property, thus represents both the law of sovereign immunity that was constitutionalized in 1974, as well as important legal context for the 1976 version of the Just Compensation Provision.[8]

(c) *We reject the State's attempts to undermine our prior precedent.*

The State does not explicitly ask us to overrule *Baranan*.[9] The

---

[8] Following *Baranan*, we have continued to hold that the Just Compensation Provision can act as a waiver of sovereign immunity for claims for injunctive relief. See *Columbia County v. Doolittle*, 270 Ga. 490, 491 (1) (512 SE2d 236) (1999); *Duffield v. DeKalb County*, 242 Ga. 432, 433 (1) (249 SE2d 235) (1978). This case does not require us to consider whether *Baranan* and its progeny constituted a consistent and definitive construction of the Just Compensation Provision, such that language readopted into subsequent constitutions is presumed to carry the same meaning. See *Elliott*, 305 Ga. at 184-185 (II) (B). It does not even require us to consider whether all of these decisions are correct; although *Doolittle* does not cite our 1995 decision holding that sovereign immunity virtually never bars a claim for injunctive relief in any context, see *Intl. Business Machines Corp. v. Evans*, 265 Ga. 215, 216 (1) (453 SE2d 706) (1995), overruled by *Center for a Sustainable Coast*, 294 Ga. at 603 (2), it certainly is consistent with that errant holding. But *Baranan*'s constitutional construction is at least *relevant* to the meaning of the language as used in subsequent constitutions. See *Elliott*, 305 Ga. at 187 (II) (B) (presumption arising from a consistent and definitive construction is simply a reflection of the principle that we look to the context in which text was enacted in determining its meaning).

[9] The State suggested at oral argument that application of the usual factors we consider in deciding whether to overrule precedent might weigh in favor of overruling *Baranan*. The State also argues that *Baranan* does not actually address whether the Just Compensation Provision waives the State's sovereign immunity for injunctive relief. But the statute invoked by the county

27

State does point to the line of decisions that suggested that the Just Compensation Provision did not permit injunctions preventing the State from constructing public improvements, at least where no private property was actually taken. See, e.g., *Moore*, 70 Ga. at 614-616 (4). But, as *Baranan* explained, those pre-*Baranan* cases that remain good law fall into the category in which no property was taken or even physically damaged, such that injunctive relief was not available.[10] And the two post-*Baranan* cases relied on by the State clearly fall into the category of cases distinguished by *Baranan* itself as not involving a taking or physical damage. See *Evans v. Just Open Government*, 242 Ga. 834, 836-837, 839-840 (5) (251 SE2d 546)

---

in *Baranan* is a statutory embodiment of the doctrine of sovereign immunity that was first enshrined in the Georgia Constitution in 1974, the same year that *Baranan* was decided. See *Nelson v. Spalding County*, 249 Ga. 334, 334-336 (1) (290 SE2d 915) (1982); *Revels v. Tift County*, 235 Ga. 333, 333-334 (1) (219 SE2d 445) (1975). And that is important because, as noted above, "sovereign immunity at common law, as it long had been understood by Georgia courts, and the sovereign immunity reserved by the 1974 amendment were one and the same[.]" *Lathrop*, 301 Ga. at 420 (II) (B).

[10] The pre-*Baranan* case that least fits this category was overruled in an earlier stage of the *McFarland* litigation. See *McFarland v. DeKalb County*, 223 Ga. 196, 201 (2) (154 SE2d 203) (1967) ("If our ruling in this case is contrary to what was held in [*Fincher*], the rule made in that case was not by a full bench, and we are bound by the full bench decision in *Nalley v. Carroll County*, 135 Ga. 835 [(70 SE 788) (1911)].").

(1979) (reversing grant of injunction enjoining construction of prison on public land, noting that "a prison is not, in a legal sense, a nuisance" and "courts will not enjoin erection of a public work at the behest of someone whose property is not actually taken"); *Dept. of Transp. v. Roberts*, 241 Ga. 433, 435 (246 SE2d 293) (1978) (relying on *Moore* and its progeny to hold injunctive relief unavailable where challenged construction was not on plaintiff motel owners' property or even the adjoining road; rather, it simply made interstate access "more circuitous").

The State also argues that the language of the Just Compensation Provision is insufficiently specific as to the remedy that it provides to waive the State's sovereign immunity for a claim for injunctive relief. And the State contends that its "ability . . . to take private property evaporates if landowners can enjoin the State from taking or damaging that property in the first place." But the State is wrong; it is the right the Just Compensation Provision affords *landowners* that would be illusory if governments were wholly immune from injunctive relief. The Just Compensation

29

Provision by its plain text — at the time we construed it in *Baranan*, as well as today — imposes on the State an obligation, albeit with exceptions that have increased over time, to pay just and adequate compensation before taking or damaging private property. If the State could claim sovereign immunity from a suit for injunctive relief against a continuing nuisance that damages private property, then the State's obligation to provide just compensation *prior* to doing the damage where the Constitution expressly requires as much would itself be hollow. And as explained above, we have previously made it clear through our decisions that a constitutional provision may waive sovereign immunity by necessary implication, not only by explicit language contained in the text of the Constitution. Therefore, the Just Compensation Provision waives sovereign immunity for a claim for injunctive relief where a requirement of prepayment applies and the compensation has not been paid.[11]

---

[11] The State can insulate itself from being subject to an injunction by exercising its power to condemn property through payment of just

By the same token, where a government agency allegedly takes or damages private property without condemning any portion of, or interest in, the property at all, the Just Compensation Provision also effects a waiver of sovereign immunity for injunctive relief. Where the government wrongly insists that it has not taken or damaged anyone's property and thus owes no compensation, it is not exercising its eminent domain power as laid out in the Georgia

compensation. See *Chambers*, 69 Ga. at 325 ("If the respondent below seeks an appeal to the courts against what he deems to be an unjust and excessive assessment by the appraisers, let him abide until the result is known, pay first the just and adequate compensation finally awarded, and then no constitutional barrier will stand against his entry and occupancy on the lands for the purposes for which it was condemned."). There is some case law that may be read to hold that the State may not use a condemnation action to provide compensation for merely anticipated "damage" to property but is limited to using its power of eminent domain to effect a "taking." See *Metro. Atlanta Rapid Transit Auth. v. Trussell*, 247 Ga. 148, 151 (1) (273 SE2d 859) (1981) ("We do not find that the people, in adopting the constitution , . . . intended to allow a public body to condemn the right to damage property without also taking a property interest."). To the extent that *Trussell* so holds, it is inconsistent with the case law that precedes it, as well as the text of the Just Compensation Provision. But this case, which holds that Mixon's claim for injunctive relief is not barred by sovereign immunity, does not require us to consider whether *Trussell* was correctly decided.

We recognize that it may sometimes be difficult to anticipate in advance that a given action on public property will create a nuisance amounting to a constitutional damaging of private property. But the Just Compensation Provision does not contain an exception for a taking or damage on the basis that it is difficult to foresee. Moreover, injunctive relief may be inappropriate even if not barred by sovereign immunity.

31

Constitution and related statutory provisions at all. Rather, it is violating the Constitution's Just Compensation Provision. See *Markham*, 37 Ga. at 281-283; see also *McFarland*, 224 Ga. at 619 (1) (alleged continuing trespass and nuisance resulting from a county's divergence of surface water onto the plaintiff's property "would be a continuing nuisance authorizing a court of equity to restrain it and to require the defendants to cease and desist *until and unless it was condemned for public purposes*"), quoted approvingly in *Baranan*, 232 Ga. at 853-855.

This understanding of the Just Compensation Provision's interaction with the doctrine of sovereign immunity may also be consistent with a recent amendment to the Georgia Constitution not at issue here. That amendment provides:

> Sovereign immunity is hereby waived for actions in the superior court seeking declaratory relief from acts of the state or any agency, authority, branch, board, bureau, commission, department, office, or public corporation of this state or officer or employee thereof or any county, consolidated government, or municipality of this state or officer or employee thereof outside the scope of lawful authority or in violation of the laws or the Constitution of this state or the Constitution of the United States.

32

> Sovereign immunity is further waived so that a court awarding declaratory relief pursuant to this Paragraph may, only after awarding declaratory relief, enjoin such acts to enforce its judgment. Such waiver of sovereign immunity under this Paragraph shall apply to past, current, and prospective acts which occur on or after January 1, 2021.

Ga. Const. of 1983, Art. I, Sec. II, Par. V (b) (1) (amended by Ga. L. 2020, p. 917, § 1). Both parties have taken the position that the amendment does not apply to this case because Mixon does not seek declaratory relief, and we do not consider whatever implications it may have here. But we note that this amendment might also allow an injunction to enforce a court declaration that government has done something constituting the taking or damaging of property without first providing compensation or going through the legal process for exercising eminent domain over the property.[12]

---

[12] We also view as unpersuasive the State's argument drawing on our prior construction of the provision of the Georgia Constitution waiving sovereign immunity "as to any action ex contractu for the breach of any written contract now existing or hereafter entered into by the state or its departments and agencies." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (c). The State notes that we have concluded that this provision waives sovereign immunity only to the extent of its specific language, i.e., only if a written contract exists. See *Ga. Dept. of Labor*, 299 Ga. at 82 (2). The State argues that we should likewise hold here that sovereign immunity is waived in inverse condemnation cases only to

(d)  *Exceptions to the requirement of prior payment found in the Just Compensation Provision may limit the scope of its waiver of sovereign immunity, but not in a way relevant here.*

As noted above, amendments to the Just Compensation Provision in recent decades have created new exceptions to the requirement that a private landowner receive just compensation before his land is taken or damaged for public use. Under the current Constitution, these exceptions include appropriations "for public road or street purposes, or for public transportation purposes, or for any other public purposes as determined by the General Assembly." Ga. Const. of 1983, Art. I, Sec. III, Par. I (b). A waiver of sovereign immunity based on failure to prepay would likely not extend to cases in which no prepayment requirement applies.[13] Our case law does

_____

the extent of the express text of the Just Compensation Provision, and that this means the waiver does not extend to claims for injunctive relief. But this argument assumes that the text of the Just Compensation Provision does not effect a waiver of claims for injunctive relief. As discussed above, we conclude that the Provision's language *does* waive sovereign immunity for certain claims for injunctive relief — i.e., where the requirement to first pay just and adequate compensation applies, and the State has failed to comply with that requirement.

[13] As noted above, a number of statutes appear also to require prepayment, perhaps even in contexts where the Just Compensation Provision does not. It may be that the logic of the implied waiver we consider today would

34

not appear to have grappled with the ramifications, if any, of these textual changes. See *Dept. of Transp. v. Edwards*, 267 Ga. 733, 738-739 (4) (482 SE2d 260) (1997) (rejecting State's argument that trial court erred by awarding landowner both money damages for taking of his property for turn lane and injunction requiring DOT to remove it).

But we need not decide here to what extent these textual changes may limit the breadth of the waiver of immunity found in the Just Compensation Provision. The State did not argue below that its actions in this case constitute a taking "for public road or street purposes, or for public transportation purposes, or for any other public purposes as determined by the General Assembly," such that the prepayment requirement does not apply, so that question is not before us. Indeed, as discussed above, where a government entity denies that it is taking or damaging property at all, it is not

suggest that an implied waiver might also arise from any statutory prepayment requirements, and perhaps other statutory conditions precedent to the exercise of eminent domain. But that question is not presented here, and we express no opinion about it.

purporting to exercise its eminent domain power and cannot claim that it is taking or damaging property for any particular purpose. Here, the State in its answer to Mixon's complaint denied that it "committed an inverse condemnation," denied that the road construction it undertook caused the alleged storm runoff, and denied that it had taken Mixon's property without providing just and adequate compensation. The record does not contain any indication that the State has deviated from that position as the case has proceeded before the trial court and on appeal. Indeed, the State continued to maintain before the Court of Appeals that it had not caused the flooding by failing to maintain the roadway. Thus, at least in this procedural posture, the State cannot contend that Mixon's property has been "taken or damaged by the state . . . for public road or street purposes, or for public transportation purposes, or for any other public purposes as determined by the General Assembly[.]" Ga. Const. of 1983, Art. I, Sec. III, Par. I (b).

(e) *Sovereign immunity does not bar Mixon's claim for injunctive relief.*

The Court of Appeals reasoned that because the Just

36

Compensation Provision waives sovereign immunity for damages claims premised on a taking or damaging of private property, it necessarily also waives sovereign immunity for Mixon's claim for injunctive relief. As discussed above, this conclusion is overbroad: some claims for injunctive relief premised on a taking or damaging of private property may indeed be barred by sovereign immunity. In particular, where no prepayment requirement applies, or the State has properly availed itself of the legal process for exercising its power of eminent domain, sovereign immunity may well bar injunctive relief.

But on the record before us, we cannot conclude that Mixon's claim for injunctive relief is so barred. Based on claims that GDOT's failure to maintain its storm water drainage systems have resulted in regular flooding on her property, Mixon alleges that GDOT has taken her property for public purposes without just and adequate compensation. There is no suggestion in the record that GDOT has afforded Mixon compensation for this alleged taking; indeed, her complaint seeks money damages. Nor is there any suggestion that

GDOT has availed itself of legal process to exercise its eminent domain power over Mixon's property.

As did the Court of Appeals, we caution that we are *not* holding that Mixon actually is entitled to obtain injunctive relief. See *Mixon*, 355 Ga. App. at 467 (3). A waiver of sovereign immunity says nothing about whether a claim is viable on the merits. Although Mixon seeks a permanent injunction "in order to prevent future nuisance and continual trespass from being inflicted upon" her property, her complaint contains no allegation that her damages claim does not provide her an adequate remedy for such a tort. And counsel for Mixon acknowledged at oral argument that money could make his client whole, while arguing that she was not limited to that remedy. "[T]he extraordinary remedy of injunction does not lie in favor of one who has an adequate remedy at law." *Ledbetter v. Callaway*, 211 Ga. 607, 610 (87 SE2d 317) (1955); see also OCGA § 9-5-1 ("Equity, by a writ of injunction, may restrain . . . a threatened or existing tort, or any other act of a private individual or corporation which is illegal or contrary to equity and good

conscience *and for which no adequate remedy is provided at law.*" (emphasis supplied)). Of course, the State may have other defenses going to the merits, as well. But the only question before us is whether sovereign immunity bars Mixon's claim, and the Court of Appeals correctly concluded that it did not.

*Judgment affirmed. All the Justices concur, except Boggs, P. J., not participating.*

Decided October 5, 2021.

Certiorari to the Court of Appeals of Georgia – 355 Ga. App. 463.

*Christopher M. Carr, Attorney General, Kathleen M. Pacious, Deputy Attorney General, Loretta L. Pinkston-Pope, Senior Assistant Attorney General, Kathleen S. Turnipseed, A. Ellen Cusimano, Assistant Attorneys General*, for appellant.

*Gibson & Associates, Douglas L. Gibson*, for appellee.