**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: August 13, 2024

S24G0336. SATCHER et al. v. COLUMBIA COUNTY.
S24G0340. COLUMBIA COUNTY v. SATCHER et al.

PETERSON, Presiding Justice.

This is a lawsuit brought by a group of property owners against Columbia County over stormwater drainage. The property owners won a permanent injunction and money damages at trial, and the County appealed to the Court of Appeals, which ruled in favor of the property owners on certain aspects of the judgment and in favor of the County on others. We granted both sides' petitions for certiorari and identified two issues for review. We granted the County's petition to consider whether the permanent injunction granted by the trial court in favor of the property owners was barred by the County's sovereign immunity. And we granted the property owners' petition to consider the Court of Appeals's determination that they

could not recover damages for harms that had occurred to their property during the course of the litigation after they presented their claims to the county through a letter notice pursuant to OCGA § 36-11-1. Our grant question focused in part on an apparent tension between that determination and our recent holding in *Wise Business Forms, Inc. v. Forsyth County*, 317 Ga. 636 (893 SE2d 32) (2023).

After briefing, oral argument, and review of the full record, we vacate the Court of Appeals's opinion to the extent that it upheld the injunction entered by the trial court, with directions that the Court of Appeals vacate the trial court's injunction as exceeding the bounds permitted by the Georgia Constitution's limited waiver of sovereign immunity for such relief.

We also conclude that we should not have granted the property owners' certiorari petition as to the Court of Appeals's ruling under OCGA § 36-11-1. That ruling — properly understood — did not articulate a general rule of law of the sort that might have gravity warranting our review; instead, it simply held that the property owners here could not obtain certain damages under the particular

2

facts of this case. Moreover, a review of the full record showed that the apparent tension between the Court of Appeals's ruling and our decision in *Wise Business Forms* is not actually present, given a ruling by the trial court that the Court of Appeals did not disturb and is not within the scope of our grant of certiorari. We therefore vacate the order granting the property owners' petition for a writ of certiorari and deny the petition in that case.

1. *Background*

Based on the post-trial findings by the trial court, the facts are as follows.[1] In 1996, plaintiffs William W. Satcher, Pierwood Investment Corp., and Columbia Road Professional Centre Owners Association, Inc. (collectively, "the Property Owners") purchased the property at issue, located in the County.[2] At that time, it was

---

[1] A trial court's factual findings after a bench trial will be upheld if there is any evidence to support them. See *Smith v. Smith*, 281 Ga. 380, 383 (1) (637 SE2d 662) (2006). The sufficiency of the evidence to support the trial court's factual findings is not at issue before this Court.

[2] On June 24, 2024, the Property Owners filed in each of these appeals a Suggestion of Death stating that William W. Satcher had died on April 20, 2024. On August 8, 2024, the Property Owners filed consent motions in both appeals to substitute Willene Satcher, as Executor of the Estate of William W. Satcher, for William W. Satcher. We have separately granted these motions.

undeveloped, but it contained a 48-inch metal pipe that was privately owned and had been used as part of the County's public stormwater drainage system since at least 1976. The property now consists of office buildings, parking lots, and surrounding streets.

In March 2011, a storm overwhelmed the pipe at the headwall, eroded a berm under the parking lot, and a portion of the parking lot collapsed. The Property Owners made repairs and replaced 17 feet of pipe. In spring 2013, heavy rains caused a section of the pipe to fail, which in turn caused part of the parking lot to collapse; the Property Owners made additional repairs to the pipe and parking lot.

In October 2013, the Property Owners sent the County a letter pursuant to OCGA § 36-11-1 outlining their claims, specifying that they raised "claims . . . based on inverse condemnation, trespass, nuisance, and negligence that intentionally caused damage to the Claimants' Property in April of 2013." The County declined to repair the Property. The Property Owners filed their complaint, naming the County as the sole defendant, on March 27, 2014. The Property

4

Owners alleged in the complaint that the designs of the County's streets and storm water system cause excessive quantities of storm water to be collected and then discharged through and around the pipe onto the Property, causing the Property to flood and to incur damages, and that this constituted a nuisance. The complaint sought an unspecified amount of "actual damages to repair the April, 2013 physical damages" and "general damages from Columbia County in an amount to be determined at trial[.]"The complaint asked the trial court to "declare the actions of Columbia County to have resulted in an inverse condemnation" and asked that the Property Owners "be paid just and adequate compensation for the taking." The complaint also sought an injunction whereby the County would "be permanently restrained and enjoined from continuing or maintaining the nuisance and trespass as alleged in the Complaint."

After the October 2013 notice (and unmentioned in their complaint) but before the final bench trial in March 2022, the Property Owners experienced harm on additional occasions

5

apparently related to stormwater. In November 2013, additional sink holes appeared, and a vehicle became stuck in one of the holes. In fall 2015, the pipe failed again, and the parking lot above it completely collapsed. In 2016, the Property Owners replaced 140 feet of pipe across the Property and repaired the collapsed parking lot. In total, the Property Owners spent $118,444.41 on repairs and at least $12,379.63 in interest on a loan taken out to cover the costs.

After the bench trial, the trial court found in favor of the Property Owners, ruling that the County had maintained and the Property Owners had been damaged by "a continuing, abatable nuisance" that rose "to the level of a taking and/or damaging without just and adequate compensation." Alternatively, the trial court found that the County had obtained an easement in the Property Owners' pipe by adverse possession or prescription and thus was liable for damages from the pipe's failure. The court awarded the Property Owners $130,824.04 in damages, indicating that this included damages experienced both prior to the Property Owners' October 10, 2013, letter to the County and after the complaint was

6

filed. The original September 14, 2022, Order and Judgment containing the trial court's findings of fact and conclusions of law also provided for injunctive relief, enjoining the County "from moving any amount of stormwater collected in the public drainage system upstream across Plaintiffs' property unless the County obtains the legal right to do so within 60 days of this order"; the trial court noted that "if the County agrees with the court's conclusion that it has a prescriptive easement, injunctive relief is unnecessary." A subsequent Final Judgment order issued on November 4, 2022, awarded to the Property Owners $73,772.58 in bad-faith attorneys' fees under OCGA § 13-6-11. The order incorporated the findings of fact and conclusion of law from the September 14, 2022, order, except as to injunctive relief. As to injunctive relief, the November 4, 2022, order provided that the County was "permanently enjoined from maintaining a defective stormwater drainage system that causes damage to Plaintiffs' property."

The County appealed the judgment to the Court of Appeals, which affirmed in part, vacated in part, and reversed in part. See

7

*Columbia County v. Satcher*, 369 Ga. App. 608 (894 SE2d 181) (2023). Relevant to this stage of the proceeding, the County argued that the nuisance of which the Property Owners complained was permanent, not abatable, and so "the statute of limitations and *ante litem* notice period began to run . . . . no later than 1996" when the Property Owners "observed stormwater moving riprap and dirt around the pipe." The County argued that the Property Owners' October 2013 letter and March 2014 filing of suit were both therefore too late. The Court of Appeals generally rejected those arguments. See id. at 611-613 (2) (b). But the Court of Appeals nonetheless vacated the damages award, concluding that the award was erroneous both because the award included damages for harms incurred after the presentation of the October 2013 notice, see id. at 613-614 (2) (c), and because the Property Owners proved special damages instead of the proper measure of damages, the diminution of the Property's market value. See id. at 617 (4). The Court of Appeals reversed the attorneys' fees award, concluding that the trial court erred in granting it because a bona fide controversy of law

existed between the parties. See id. at 618 (5). The Court of Appeals also concluded that the trial court did not err by granting an injunction, rejecting the County's arguments that (1) the Property Owners were not entitled to any relief at all, let alone an injunction, and that (2) because the evidence did not show that the storm water system is defective, the trial court erred by enjoining the County from maintaining a defective storm water system. See id. at 618-619 (6). The parties filed cross-petitions for certiorari, and we granted both petitions as to the questions related to OCGA § 36-11-1 and sovereign immunity referenced above.

2. *Sovereign immunity bars at least some of the injunctive relief awarded below.*

We granted the County's petition for certiorari to consider whether sovereign immunity barred the injunctive relief provided by the trial court. We conclude that the injunction issued in this case exceeds the scope of the sovereign immunity waiver provided by the Just Compensation Provision.

Article I, Section II, Paragraph IX of the Georgia Constitution states that, except as otherwise provided in that paragraph,

9

"sovereign immunity extends to the state and all of its departments and agencies" and "can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e). Absent some waiver by the Georgia Constitution itself or a statute, sovereign immunity bars claims for injunctive relief against the State. See *Dept. of Transp. v. Mixon*, 312 Ga. 548, 550 (2) (a) (864 SE2d 67) (2021). And that sovereign immunity also extends to "all of [the state's] departments and agencies," which we have held includes counties. See *Gilbert v. Richardson*, 264 Ga. 744, 747 (2) (452 SE2d 476) (1994). "[T]he applicability of sovereign immunity is a threshold determination, and, if it does apply, a court lacks jurisdiction over the case, and concomitantly, lacks authority to decide the merits of a claim that is barred." *McConnell v. Dept. of Labor*, 302 Ga. 18, 19 (805 SE2d 79) (2017).

Although implied waivers of sovereign immunity are generally disfavored, a constitutional provision may waive sovereign

immunity by necessary implication. See *Mixon*, 312 Ga. at 550-551 (2) (a). The Georgia Constitution provides that, as a general matter, "private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid." Ga. Const. of 1983, Art. I, Sec. III, Par. I (a). We made clear in *Mixon* that this Just Compensation Provision "waives sovereign immunity for claims seeking injunctive relief in two circumstances: (1) where the Just Compensation Provision's requirement of prepayment before a taking or damaging applies and has not yet been met; or (2) where the authority effecting a taking or damaging has not invoked the power of eminent domain." 312 Ga. at 548. But "[t]his waiver under the Just Compensation Provision . . . allows an injunction only to stop the taking or damaging until such time as the authority fulfills its legal obligations that are conditions precedent to eminent domain." Id.

The injunction entered here clearly exceeds the scope of the sovereign immunity waiver provided by the Just Compensation Provision. The trial court "permanently enjoined" the County "from

11

maintaining a defective storm water drainage system that causes damage to Plaintiffs' property." Under *Mixon*, the waiver of sovereign immunity in this context is limited to that necessary "to stop the taking or damaging until such time as the authority fulfills its legal obligations that are conditions precedent to eminent domain"; i.e., prepayment of just and adequate compensation or exercise of the power of eminent domain under a statute that waives the general requirement of prepayment. 312 Ga. at 548. The injunction here is permanent; on its face, its duration is not limited to the extent of the sovereign immunity waiver recognized in *Mixon*.[3] Thus, the injunction exceeds the waiver of sovereign immunity in this context.

---

[3] The language of the September 14, 2022, order, which provided for injunctive relief "unless the County obtains the legal right to [move water across the Property] within 60 days of this order[,]" came closer to falling within the scope of the Just Compensation Clause's waiver of sovereign immunity because it provided the County the ability to terminate the injunction by providing compensation for the taking found by the trial court. But the time-limited nature of the County's ability to terminate the injunction meant that the September 2022 injunction likely would not have survived scrutiny from a sovereign immunity perspective. And in its Final Judgment issued less than two months later, the trial court modified the injunctive relief, making clear that it was "permanently" enjoining the County.

To be clear, we do not embrace the County's argument that sovereign immunity bars injunctive relief altogether in this case. The County argues that sovereign immunity bars injunctive relief here because the limited waiver of sovereign immunity described in *Mixon* does not apply to immediately obvious, permanent nuisances for which the statute of limitations has expired. But the Court of Appeals concluded that, regardless of whether the plaintiff elected to treat the nuisance as abatable or permanent, the statute of limitations on claims over the harms experienced in 2013 and 2016 had not expired. See *Satcher*, 369 Ga. App. at 611-612 (2) (b). Although the County enumerated this ruling as error in its certiorari petition, we did not grant certiorari on that particular question and do not address it here.

The County also argues that sovereign immunity as to injunctive relief is not waived here because the Property Owners have not introduced evidence to support the appropriate amount of damages (which, according to the Court of Appeals, is the diminution of value of the Property) and thus there are no conditions

precedent that the County can be compelled to perform. But although the County argues that the record does not show the evidence of a compensable taking at this point, the trial court found that the County had maintained and the Property Owners *had been damaged by* "a continuing, abatable nuisance" that rose "to the level of a taking and/or damaging without just and adequate compensation." The Court of Appeals did not disturb that general ruling and in fact, in rejecting the County's challenge to the award of injunctive relief, concluded that the County "has not established that the [Property Owners] are not entitled to any relief whatsoever[.]" *Satcher*, 369 Ga. App. at 619 (6). Our grant of certiorari in this case did not disturb these rulings. Even more important, the County's argument misunderstands the constitutional limitations on its power of eminent domain. The exercise of eminent domain is a power of the government that is conditioned in the Georgia Constitution on the government paying just and adequate compensation. If the government wants to take or damage private property for public use, it is the *government's*

responsibility to pay just compensation. The County's argument inverts this key principle.

Because the Court of Appeals here affirmed an injunction that exceeded the waiver of sovereign immunity effected by the Just Compensation Clause, we vacate that portion of the Court of Appeals's opinion affirming that injunction. We remand for the Court of Appeals to remand the case to the trial court with instructions to consider the issuance of a new injunction that does not exceed the constitutional waiver of sovereign immunity.

3. *We decline to decide the question we posed as to the availability of damages for harms incurred after sending a notice pursuant to OCGA § 36-11-1.*

We also granted the Property Owners' petition for certiorari in S24G0336 to consider their argument that the Court of Appeals erred by vacating the damages award as to harms occurring after the date of the Property Owners' October 2013 letter sent pursuant to OCGA § 36-11-1. We now conclude that we should not have granted certiorari on this issue.

The Court of Appeals did not hold that plaintiffs may *never*

15

recover for damages incurred after presentation of a claim under OCGA § 36-11-1. Rather, after reviewing that opinion and full briefing in the context of the full record now available to us, we see that the Court of Appeals's holding was more limited than was clear at the certiorari stage. That court's conclusion that *these* plaintiffs "could recover only damages incurred during the 12 months preceding the presentation of their ante litem notice," *Satcher*, 369 Ga. App. at 613 (2) (c), did *not* foreclose the possibility that a plaintiff could recover damages incurred after the presentation of a claim pursuant to OCGA § 36-11-1. The court merely held on the particular facts of this case that the Property Owners could not obtain damages incurred after the presentation of the October 2013 notice. We do not read the Court of Appeals's opinion as stating any general rule as to the availability of damages incurred after presentation of a claim pursuant to OCGA § 36-11-1. And so the Court of Appeals's ruling as to the availability of the particular damages at issue in this case does not pose a question of gravity for

this Court to review on certiorari. See Supreme Court Rule 40 (1).[4]

We express no opinion as to whether that narrow ruling was correct.

Moreover, the question on which we granted certiorari is not, upon further review, actually posed by this case. We stated that question as whether a property owner may "be awarded damages for harms occurring after the property owner sent a county an ante litem notice where the subsequent harms are based upon the same permanent and continuing nuisance encompassed by and forming the basis for the first ante litem notice[.]" We cited *Wise Business Forms*, implying there was a possible tension between that decision and the Court of Appeals's ruling here. But the language at issue in *Wise Business Forms* refers to options for suing over a permanent nuisance. See 316 Ga. at 640-643 (2). Here, the trial court found that

---

[4] That rule states:

Review on certiorari is not a right. A petition for the writ will be granted only in cases of great concern, gravity, or importance to the public. . . . Certiorari generally will not be granted merely to correct an asserted error, particularly when the asserted error concerns only the sufficiency of the evidence, the correctness of factual findings, or the application of a properly stated rule of law to the facts of a particular case.

17

the nuisance in question was abatable, not permanent. The Court of Appeals did not disturb that finding, and we did not grant review of this aspect of the trial court's judgment. Thus, this case does not present a proper vehicle for resolving any tension between *Wise Business Forms*' guidance as to suing over a permanent nuisance and a strict reading of OCGA § 36-11-1 that does not allow recovery for harms incurred after a presentation of a claim under that statute.

For these reasons, the Property Owners' petition for certiorari was improvidently granted.

*Judgment vacated in part and case remanded in Case No. S24G0340. Writ of certiorari in Case No. S24G0336 improvidently granted and petition for certiorari denied. All the Justices concur.*